**In re the COMMITMENT OF Boyd MULLENS.**

**No. 09–01–534 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Nov. 15, 2002.

Decided Dec. 19, 2002.

Kenneth W. Balusek, Huntsville, for appellant.

Autumn Lewis, Special Prosecution Unit, Civil Division, Huntsville, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Pursuant to Title 11, Chapter 841 of the Health and Safety Code ("the SVP statute"), the State of Texas filed a petition to civilly commit Boyd Mullens as a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–841.147 (Vernon Supp.2003). A jury found that Mullens suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court entered a final judgment and order of civil commitment, from which Mullens appeals. Mullens presents five issues.

### ANALYSIS

### *Is The Statute Punitive?*

■ In his first issue Mullens argues that the Texas sexually violent predator statute is punitive in nature and violates basic constitutional safeguards. The United States Supreme Court has found similar SVP commitment statutes to be civil in nature. *See Seling v. Young,* 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001); *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Relying on this precedent, we recently considered and rejected the argument that the Texas SVP statute is punitive, not civil. *See Beasley v. Molett,* No. 09–01–078 CV, 2002 WL 31835031, —— S.W.3d —— (Tex. App.-Beaumont December 19, 2002, no pet. h.).

Mullens attempts to distinguish between the Kansas SVP statute found constitutional in *Hendricks* and the Texas SVP statute. The Kansas statute requires, as a minimum prerequisite for the SVP finding, a prior charge for a sexually violent offense; it does not require a prior conviction for a sexually violent offense for SVP purposes. *See Hendricks,* 521 U.S. at 351–52, 117 S.Ct. 2072. Mullens argues that the prior convictions under Chapter 841 are not presented solely for evidentiary purposes and are a prerequisite to civil commitment, and that the Act is therefore punitive.

In *Allen v. Illinois,* 478 U.S. 364, 370–72, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986), the Supreme Court found an Illinois statute to be non-punitive, though the statute required proof of at least one act or attempted act of sexual assault. 478 U.S. at 371, 106 S.Ct. 2988. The Court held that the "antecedent conduct is received not to

punish past misdeeds, but primarily to show the accused's mental condition and to predict future behavior." *Id.* The Texas statute is different in that it requires a prior sexually violent offense. But the offense showing under the Texas statute and the proof submitted at trial under the Illinois statute, and the Kansas statute, serve the same purpose; they are received primarily to show the accused's mental condition and to aid in the prediction of future behavior.

Mullens also claims section 841.085 is punitive in nature and operates as a deterrent, because it makes the violation of the commitment requirements imposed by the trial judge a third degree felony, and it has nothing to do with treatment. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.085 (Vernon Supp.2003). He further argues that the enhancement scheme in the Texas Penal Code, as applied to the third degree felony in section 841.085, would authorize his incarceration for twenty-five to ninety-nine years or life. *See* TEX. PEN.CODE ANN. § 12.42(d) (Vernon Supp.2003). We addressed the issue of the punitive or civil nature of the Act in *Beasley;* we need not address it further. As to the claim of the deterrent purpose of section 841.085, a deterrent effect may have both civil and criminal goals; the existence of dual deterrent goals does not render the entire Act punitive. *See generally Hudson v. United States,* 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *United States v. Ursery,* 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). And when the entire Act is considered, deterrence, whether civil or criminal in nature, is not the primary purpose or effect of the Act. In section 841.001, the legislature found "that a small but extremely dangerous group of sexually violent predators exists and those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001 (Vernon Supp.2003). Based on that initial finding, the legislature further found that a "civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." *Id.* Section 841.085 serves the goals of protection of society from future dangerous behavior and of supervision of persons being treated on an outpatient basis. The possible criminal penalty which may be imposed for a violation of a judge's order does not render the entire Act punitive in nature. *See generally Bennis v. Michigan,* 516 U.S. 442, 451–52, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).

Finally, Mullens argues that section 841.085 punishes the person for prior criminal conduct. But section 841.085 deals only with violations of the requirements in the commitment order, not any prior criminal conduct. Issue one is overruled.

### Serious Difficulty in Controlling Behavior

In issue two, Mullens contends his right to due process has been violated because, he says, the State failed to prove he has serious difficulty in controlling his behavior. In *Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 871, 151 L.Ed.2d 856 (2002), the Supreme Court declared that due process requires "proof of serious difficulty in controlling behavior" before a person can be civilly committed as a sexually violent predator. The proof of "inability to control" must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects the person to civil commitment from the dangerous but typical recidivist convicted in a criminal case. *Crane,* 534 U.S. at 413, 122 S.Ct. 867.

■ Chapter 841 requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062 (Vernon Supp.2003). Because the statute places upon the State the burden of proof employed in criminal law, we adopt the appellate standard of review in criminal cases for legal sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In a legal sufficiency review, this court reviews all of the evidence in a light most favorable to the verdict. *Id.* We look to see if a rational factfinder could have found, beyond a reasonable doubt, the elements required for commitment under the SVP statute.

A Kansas statute was considered by the Supreme Court in *Crane*, as it was in *Kansas v. Hendricks*, 521 U.S. at 346, 117 S.Ct. 2072. *Crane*, 534 U.S. at 409, 122 S.Ct. 867. The Supreme Court noted in *Crane* that the *Hendricks* case involved an individual suffering from pedophilia—"a mental abnormality that critically involves what a lay person might describe as a lack of control. DSM–IV 571–572 (listing as a diagnostic criterion for pedophilia that an individual have acted on, or been affected by, 'sexual urges' toward children)." *Crane*, 534 U.S. at 414, 122 S.Ct. 867; *see also Hendricks*, 521 U.S. at 360, 117 S.Ct. 2072. Hendricks had admitted he could not control the urge to molest children. *Id.* As *Crane* stated, " '[I]nability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413, 122 S.Ct. 867. In reviewing the sufficiency of the evidence concerning "inability to control behavior," we con-

sider such matters as the nature of the psychiatric disorder and the severity of the abnormality itself. *Crane*, 534 U.S. at 413, 122 S.Ct. 867. As noted in *Crane* and *Hendricks*, the psychiatric profession considers pedophilia a serious mental disorder. *Crane*, 534 U.S. at 412, 414, 122 S.Ct. 867; *Hendricks*, 521 U.S. at 360, 117 S.Ct. 2072.

Dr. Michael Gilhousen, a psychologist, testified for the State. He performed a psychological evaluation on Mullens "pursuant to the civil commitment proceedings." Gilhousen based his evaluation on his interview with Mullens and various psychological tests.[1]

Gilhousen expressed his opinion that Mullens suffers from a behavioral abnormality that makes Mullens likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a)(2) (Vernon Supp.2003). The SVP statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (Vernon Supp.2003). Based on the tests, the interview, and other records before him, Gilhousen diagnosed pedophilia and narcissistic personality disorder and concluded Mullens has a "behavioral abnormality." On cross-examination of Gilhousen, Mullens called into question the results of the tests and Gilhousen's diagnoses; Gilhousen remained firm in his diagnoses and conclusions.

Mullens has five prior convictions for sexually-related offenses against three children: indecency with a child, two con-

---

1. Mullens took various tests to assess the nature of his problem: the Hare Psychopathy Checklist to aid in determining recidivism in sex offenders; the MnSOST–R, an "actuarial instrument" to predict reoffending in sex offenders; and the Static–99 test.

victions for sexual assault of a child, and two convictions for aggravated sexual assault of a child. Dr. Gilhousen testified the records he reviewed indicated Mullens supplied the children with "gifts, money, alcohol, cigarettes, pool cues and things like that to gain acceptance with them and to establish a seemingly innocent relationship to be with with an eye towards ... perpetrating sexual crimes at a later time." Mullens began with the "Boy's Club community service ... and then expanded from there." Gilhousen testified "it's a known pattern for pedophiles to do that kind of behavior, to groom their victims...." Gilhousen thought it was very clear that Mullens had no sympathy for the victims—"no evidence of any empathy whatsoever towards those victims." Mullens placed some of the blame on the child victims and also expressed unwillingness to participate in a sex offenders' program because Mullens thought they "belittled" him.

Gilhousen recited the three criteria used to diagnose pedophilia and found each to be present in Mullens: (a) Over a period of at least six months, the person has recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children generally age 13 years or younger; (b) a person has acted on these sexual urges, or the sex urges or fantasies caused marked distress or interpersonal difficulties; (c) the perpetrator is at least age 16 years and at least five years older than the child. In Dr. Gilhousen's opinion, a pedophile will always have desires for sexual relationships with children. Based on the interview with Mullens and the psychological tests administered to him, Gilhousen concluded Mullens is likely to commit acts of a sexual nature with other children once he is released from prison.

Dr. Rahn Bailey, a psychiatrist, testified for the State. Although he did not interview Mullens, he did review records pertaining to Mullens. He too concluded Mullens has a "behavioral abnormality." Mullens argues that Dr. Bailey's characterization of pedophilia as "opportunistic" means that the person has an ability to control his behavior. But the fact that a person waits for an opportunity to act does not mean the person has no serious difficulty in controlling behavior. Bailey testified that in his opinion with each successive offense the risk of reoffense grows.

Douglas Bertling, a psychologist in charge of evaluation of sex offenders before their release from prison, testified for the State. Like Dr. Gilhousen, Bertling would place Mullens in a high risk category to repeat as a sex offender. As with Dr. Gilhousen, Mullens challenged the validity of the tests and their application to him.

Ronald Patterson, a licensed master social worker, advanced clinical practitioner, and registered sex offender treatment provider with the Council of Sex Offender Treatment in Texas, testified for the defense. Mullens had been a resident of a half-way house and met there with Patterson weekly for approximately a year and a half, mainly in group therapy sessions. Patterson described Mullens as a "regressed offender," not a pedophile. In Patterson's view, the two conditions are different. Patterson testified that, unlike a pedophile who is a fixated sex offender, the regressed offender has functioned well until a certain age and then made decisions that led to the commission of crimes against children. Patterson acknowledged that the "regressed offender" is not a diagnosis in the DSM–IV, a tool used in psychological and psychiatric communities for making diagnoses. In Patterson's professional opinion, "Mullens is at low risk to

re-engage in a behavior that he went to the penitentiary for."

■ The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App. 1994); *see also Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 866 (Tex.1982). The jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *See Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App. 1986); *see also Harker v. Coastal Engineering, Inc.,* 672 S.W.2d 517, 520 (Tex. App.-Corpus Christi 1984, writ ref'd n.r.e.). Further, a jury may draw reasonable inferences from basic facts to ultimate facts. *See Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App.2000). On the evidence in this record, a rational trier of fact could find beyond a reasonable doubt that Mullens had serious difficulty in controlling his predatory behavior because of a defined abnormality. Issue two is overruled.

### *Behavioral Abnormality*

■ In issue three Mullens contends there was legally insufficient evidence to establish beyond a reasonable doubt that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The State presented two expert witnesses (one a psychologist, the other a psychiatrist), who testified, based on Mullens' records and the statutory definition, that he suffered from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. A third witness, a psychologist, testified Mullens was in the high risk category to reoffend.

Through cross-examination, Mullens sought to discredit the psychological tests administered to Mullens and the conclusions reached by the State's experts. The jury was free to judge the credibility of the witnesses and the weight to be given their testimony and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. The evidence, as detailed in issue two, was sufficient to establish beyond a reasonable doubt that Mullens has a behavioral abnormality that makes him likely to engage a predatory act of sexual violence. Issue three is overruled.

### *Constitutionality of Final Judgment and Order of Commitment*

■ In issue four, Mullens argues that the statute and, as a result, the final judgment and order of commitment, are unconstitutionally vague. He also appears to argue that the statute violates the separation of powers doctrine by improperly delegating authority to the trial judge. The four sections he claims are vague are the following:

(A) Section 841.082(a)(1), which allows the trial judge to determine where the SVP lives after he is released from prison;

(B) Section 841.082(a)(4), which requires the SVP's participation in a "specific course of treatment" without defining what the course is or who the treatment provider and case manager are;

(C) Section 841.082(a)(5), which requires the SVP to submit to a tracking service and other appropriate supervision without telling him which places he cannot go or what the "other" supervision is;

(D) Section 841.082(a)(9), which requires the SVP to submit to any other requirements determined necessary by the trial judge without detailing those requirements.

*See* TEX. HEALTH & SAFETY CODE ANN. § 841.082(a)(1),(4), (5), (9) (Vernon Supp. 2003).

Mullens claims these requirements are unconstitutional because persons of "common intelligence" would have to guess at their meaning and application and because some of the requirements improperly delegate basic matters to the trial judge, case manager, and treatment staff. We have previously addressed and rejected a vagueness argument, in relation to section 841.082(a)(9), along with a separation of powers attack on the SVP statute, in *Beasley*, 2002 WL 31835031, at *13, —— S.W.3d at ——. Though Mullens attacks additional subsections of 841.082 in his constitutional argument, our analysis of the vagueness and separation of powers claims is the same. Section 841.082(a) requires the trial judge to impose on the SVP the requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. Once those terms or requirements are set out in the order, the person has specific notice of what is required. We are not persuaded the statute is unconstitutionally vague because it requires the trial judge to set out the commitment requirements in the order, or because it allows the trial judge to delegate authority to, among others, the Interagency Council on Sex Offender Treatment (to provide the necessary and appropriate treatment) and to a tracking service or other supervisory entity for the purpose of tracking the person. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.007, 841.082 (Vernon Supp.2003). The order itself is not vague in its requirements. Issue four is overruled.

*Privilege Against Self–Incrimination*

 In issue five, Mullens argues his Fifth Amendment privilege against self-incrimination was violated when the court ordered him to submit to polygraph examinations as a condition of civil commitment. He says if he refuses to take a polygraph exam, he is subject to criminal punishment for violating the civil commitment order; and if he takes the exam, he may be compelled, in violation of his Fifth Amendment rights, to reveal information that, although not criminal, may result in criminal prosecution because the compelled information may show technical violations of the commitment order. We rejected this argument in *Beasley*. *Beasley*, 95 S.W.3d at 608–09. Chapter 841 and the order do not by their terms attach a penalty for invoking the Fifth Amendment privilege. The Fifth Amendment privilege is not self-executing; it is a privilege that must be asserted. *See In re Verbois*, 10 S.W.3d 825, 828 (Tex.App.-Waco 2000, orig. proceeding [mand. denied]) (The privilege must be asserted on a question-by-question basis.).

Appellant's issues are overruled. The judgment and order of the trial court are affirmed.

AFFIRMED.

DON BURGESS, Justice, dissenting.

I concur in all respects with the exception of that portion which upholds the validity of TEX. HEALTH & SAFETY CODE ANN. § 841.082(a)(9) (Vernon Supp.2003). As stated in my dissent in *Beasley v. Molett*, 95 S.W.3d 590 (Tex.App.-Beaumont 2002, no pet. h.), I believe this section is an unconstitutional delegation or power by the legislature and, when read in conjunction with section 841.085 of the code, creates a criminal statute that violates the void for vagueness doctrine.