In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00193-CV
_____

IN RE COMMITMENT OF BERTIS DOYLE CUPIT

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-06-06636 CV

_____

**MEMORANDUM OPINION**

Bertis Doyle Cupit challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013) (the SVP statute). In two issues, Cupit challenges the legal and factual sufficiency of the evidence supporting the jury's verdict, which he argues is based upon the mere *ipse dixit* of the State's testifying forensic psychiatrist. We conclude that Cupit's issues are without merit, and we affirm the trial court's judgment.

The State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. *Id.* § 841.062(a). Because the SVP statute employs a beyond-a-reasonable-doubt burden of proof, under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). The factfinder has the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a). A "'[b]ehavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person

becomes a menace to the health and safety of another person." *Id*. § 841.002(2). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.— Beaumont 2003, pet. denied).

Cupit does not challenge the sufficiency of the evidence with regard to his status as a repeat sexually violent offender. *See* Tex. Health & Safety Code Ann. § 841.003(b). Cupit's offense history includes convictions for sexually assaulting the sixteen-year-old sister of a former girlfriend, an adult female acquaintance, and his twelve-year-old daughter. In 1979, Cupit pled guilty to the offense of rape of a child and was placed on probation. His probation was revoked in 1980 and he was incarcerated until January 1984. In 1986, Cupit pled guilty to and was convicted of aggravated sexual assault. He received a ten-year sentence but was released to mandatory supervision in February 1990. In 1993, Cupit pled guilty to and was convicted on three counts of aggravated sexual assault of a child, for which he received concurrent, twenty-year sentences. The civil commitment trial preceded his release from prison after having served his sentence.

Dr. David Self, a forensic psychiatrist, testified that he evaluated Cupit for a behavioral abnormality and that he was able to form an opinion that Cupit has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Cupit does not challenge Dr. Self's qualifications to render a professional opinion on behavioral abnormality, but he contends Dr. Self provided a baseless and conclusory opinion on which the jury could not rely in reaching its verdict.

Our review of the appellate record reveals that Dr. Self adequately explained the basis for his professional opinion. Dr. Self described the standard methodology used in Texas by professionals in his field for the evaluation process, which includes: examining the documents assembled by the Multidisciplinary Team, interviewing the subject, and the application of structured clinical judgment that considers risk assessment actuarial instruments that have been scored by psychologists, the subject's sexual criminal history, his lifestyle instability or criminality and intimacy deficits, and issues about sex offender treatment and supervised release.

For this case, Dr. Self testified that he interviewed Cupit for just under two hours, and reviewed actuarial tests and a report prepared by Dr. Daniel Murrie, who placed Cupit in the moderate-to-high-risk group. Dr. Self considered and explained in detail Cupit's three sexual assault convictions, which Dr. Self found

4

to be significant for increased risk due to a broad victim pool and a diverse array of offending sexual conduct. Based on offense reports and charges that were never prosecuted to judgment, Dr. Self considered the possibility that Cupit committed other offenses or groomed additional victims. In considering Cupit's volitional capacity, Dr. Self found it noteworthy that Cupit committed the sexual assaults against non-consenting victims despite having a consenting sexual partner at the time of each offense and that he continued to offend even though he was on a form of parole. According to Dr. Self, Cupit demonstrated his inability to control his impulses when he committed an offense after twice being punished for sexual offenses, greatly increasing the risk that he will reoffend. Dr. Self also considered Cupit's sexual deviance, or propensity for being excited by abnormal circumstances.

Using the Diagnostic and Statistical Manual of the American Psychiatric Association, or DSM, Dr. Self diagnosed Cupit as having paraphilia not otherwise specified-nonconsenting type and antisocial personality disorder. Dr. Self testified that Cupit met the criteria for the nonconsenting type of paraphilia NOS because he differentially chose a nonconsenting partner when he had a consenting partner available to him. He also testified that Cupit met five of the seven criteria for antisocial personality disorder, and his school history showed clear evidence of the

presence of conduct disorder in his youth. Additionally, Dr. Self testified that he suspected Cupit was a pedophile but, due to a lack of evidence of activity continuing for six months or more, Cupit did not meet the diagnostic criteria for pedophilia. Dr. Self explained that many people with unusual sexual appetites never break the law, but Cupit was at great risk to reoffend because he displayed a combination of acting on deviant impulses, a lifestyle that was tolerant of crime, and disregard for the rights and feelings of others.

Further, Dr. Self testified that Cupit demonstrated an unstable social history that included six marriages, methamphetamine use, manufacturing alcohol in prison, and renting out a contraband cellphone while in prison. He explained that Cupit's other risk factors include his lack of sex offender treatment and his belief that he did not need it and that his absolute lack of insight and desire to change did "not bode well for him prognostically." Although Dr. Self doubted that Cupit would benefit from sex offender treatment, he testified that based on Cupit's psychopathic tendencies, treatment would make it possible to monitor him for risky behavior.

Dr. Self relied on the types of records relied upon by experts in his field and performed his evaluation in accordance with his training as a forensic psychiatrist. Dr. Self based his opinion on facts and data he gathered from Cupit's records, their

6

interview, and Dr. Murrie's risk assessment. He detailed the relevant facts and explained how those facts played a role in his evaluation. Dr. Self concluded that Cupit suffers from a behavioral abnormality as defined by the SVP statute. Contrary to the argument in Cupit's brief, Dr. Self's testimony is not baseless and conclusory.

Cupit argues that Dr. Self's opinion lacks a sufficient basis because Dr. Self admitted that "paraphilia not otherwise specified nonconsensual type" is a controversial diagnosis. Dr. Self explained that one of the chairs of the DSM committee, a very prominent psychiatrist named Allen Frances, objected to the use of this diagnosis because in his opinion serial rape is a crime and does not indicate a mental disorder. According to Dr. Self, many other people considered a preference for a coercive environment to be differential for paraphilia.

Cupit contends Dr. Self's opinion testimony provides no evidence from which the jury could conclude that Cupit has serious difficulty controlling his behavior, but Dr. Self explained in detail how Cupit's impulsivity is demonstrated by the pattern of sexual reoffending and irresponsibility that form the basis for his mental disorder diagnoses. Also, Cupit argues that Dr. Self failed to demonstrate that Cupit is likely to reoffend sexually because the doctor admitted his methodology requires him to be subjective, but Dr. Self explained that some

7

elements of subjectivity factor into anyone's judgment but his methodology is based upon research and literature reflected in the DSM and actuarial instruments like the Static-99.  Dr. Self acknowledged that Dr. Murrie gave an approximate 3.9% five-year recidivism rate for offenders in Cupit's Static-99 group, but he noted that Dr. Murrie said the Static-99 did not represent true risk and that after taking into consideration Cupit's sexual criminal history, antisocial background and sexual deviance, Drs. Self and Murrie "landed on the same square pretty much."

We conclude that Dr. Self's opinion testimony represents "a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206.  In its exclusive role as the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury resolved any conflicts and contradictions in the evidence by believing all, part, or none of the witness's testimony, and by drawing reasonable inferences from basic facts to ultimate facts. *Mullens*, 92 S.W.3d at 887.

The jury heard evidence of Cupit's offenses, his testimony, and the expert's testimony regarding his risk for reoffending. Serious difficulty controlling behavior can be inferred from Cupit's past behavior and Dr. Self's evaluation. *In re Commitment of Washington*, No. 09-11-00658-CV, 2013 WL 2732569, at *6 (Tex.

8

App.—Beaumont June 13, 2013, pet. denied) (mem. op.). Viewing all the evidence in the record in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Cupit is a sexually violent predator. *See Mullens*, 92 S.W.3d at 885. Furthermore, weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that would compel ordering a new trial. *Day*, 342 S.W.3d at 213. We hold the evidence is legally and factually sufficient, overrule Cupit's issues, and affirm the trial court's judgment and order of civil commitment.

 AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on April 9, 2014
Opinion Delivered September 4, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.