In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00260-CV
_____


IN RE COMMITMENT OF DWIGHT DELEON

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-11-12474 CV**
_____

**MEMORANDUM OPINION**

On motion for rehearing, we withdraw our opinion of February 12, 2015, and issue this substitute opinion.

The State of Texas filed a petition to commit Dwight DeLeon (DeLeon) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014). A jury found that DeLeon is a sexually violent predator (SVP), and the trial court rendered a final judgment and an order of civil commitment. In four appellate issues, DeLeon challenges certain comments by the trial court to the jury, challenges the legal and factual sufficiency of the evidence

1

supporting the jury's finding that he suffers from a behavioral abnormality, and argues that this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 Tex. App. LEXIS 6974 (Tex. App.—Beaumont 2014, pet. denied) (mem. op.) renders Chapter 841 unconstitutional. We affirm the trial court's judgment.

TRIAL COURT'S COMMENTS DURING VOIR DIRE

In issue one, DeLeon argues that the trial court improperly commented on the weight of the evidence during voir dire. A party complaining of an alleged improper comment by the trial court must show not only that the trial court's comments were improper but also that the improper comment also caused harm. *See World Car Nissan v. Abe's Paint & Body, Inc.*, No. 04-12-00457-CV, 2013 Tex. App. LEXIS 9442, at *8 (Tex. App.—San Antonio July 31, 2013, pet. denied) (mem. op.). "We examine the record as a whole to determine whether the comment unfairly prejudiced the complaining party." *Id.* We will reverse the judgment only when the trial court's comments are improper and probably caused the rendition of an improper judgment. *Id.* at **7-8; *see also* Tex. R. App. P. 44.1.

During voir dire, the trial court stated:

> Now, oftentimes in this court we talk about several different issues. One of those is pedophilia. Okay? One of those is homosexuality. Those are topics that come up in this court. Now - - trying to put a little sugar on it for you - - most people, what they know about those topics are what you read in the newspapers or on

2

the Internet. And we all know the Internet is never wrong. Right? So when you are sitting here as a juror you can expect to hear from a doctor, everybody understand that, who is going to explain what these issues mean to you potentially. That's what we're talking about here in this court today. And - - but you don't get any education - - you know, college credit or anything for it. But, you know, you do get to learn something that you can go and impress people with. And I let you take notes because you're going to need to take notes because they use a lot of big words and put them together really quickly.

Later, during DeLeon's voir dire, DeLeon's counsel asked the venire members, "Can you set aside any bias if you find there's an offense against a child, can you listen to all the evidence and follow the law . . . ?" As DeLeon's counsel began asking questions of the individual members of the venire, the following exchange occurred:

> THE COURT: I've asked this question already. Okay? So just ask it as a group. It will be a lot faster. Anybody who can't be fair to a pedophile? Don't answer the question if I've already got you down.
> [DELEON'S COUNSEL]: This is slightly different. Instead of pedophile, it's if there have been crimes against children.
> THE COURT: That's what pedophile means. Don't confuse these jurors. Ask your question again.

DeLeon asserts on appeal that these comments by the trial court during voir dire (1) "informed the venire that it would have an educational opportunity to hear from an expert (whom the court knew to be the State's expert) on the subjects of pedophilia and homosexuality" and thereby emphasized the State's expert testimony and vouched for its credibility; (2) improperly commented on the weight of the evidence by commenting on what it believed a pedophile was; and (3)

3

improperly left the venire with the impression that a pedophile is someone who commits crimes against children and that appellant's counsel was attempting to confuse the venire.

To preserve error regarding a judge's comments during a trial, a party must both object to the comment when made and request an instruction, unless an instruction concerning the comment would not have rendered the comment harmless. *In re Commitment of Naden*, No. 09-13-00345-CV, 2014 Tex. App. LEXIS 10991, at **2-3 (Tex. App.—Beaumont Oct. 2, 2014, pet. filed) (mem. op.). The record shows that DeLeon failed to object to these comments during the trial, and that he failed to ask for any instructions to mitigate the impression he claims the trial court gave the jury through them. DeLeon argues that a limiting instruction could not cure any alleged harm.

Assuming, without deciding, that the trial court's comments were improper, we conclude that DeLeon's complaints about these matters could have been resolved by proper instructions. On request, the trial court could have instructed the jury to disregard its remarks and could have explained that its comments were not a reflection of the trial court's views regarding the merits of DeLeon's case or of the testimony, if any, which may or may not be offered by any particular witness. Such an instruction, in our opinion, would have been a sufficient remedy

4

that would have cured any alleged prejudice that might relate to the trial court's comments at issue.

Because appropriate instructions were capable of remedying any alleged harm, and because DeLeon failed to object or request that the jury be instructed regarding the comments, DeLeon's complaints about these comments were not properly preserved for our review. *See id.* at **1-2; *see also* Tex. R. App. P. 33.1(a)(1)(A). We overrule DeLeon's first issue.

## LEGAL AND FACTUAL SUFFICIENCY

In his second and third issues, DeLeon contends the evidence is legally and factually insufficient to support the jury's verdict because the State failed to present evidence demonstrating that DeLeon suffers from a behavioral abnormality. DeLeon specifically argues that the evidence is legally insufficient to support a finding that he suffers from a behavioral abnormality because Dr. Arambula's opinion that DeLeon is a sexually violent predator "has no stated basis in his field and is too conclusory to support the jury's verdict." DeLeon contends that the State presented no other evidence besides Arambula's testimony to show that DeLeon is a sexually violent predator, Arambula's "sexual deviance" diagnosis lacks support because he relies on diagnostic criteria for pedophilia to support his diagnosis but he states the DSM chapter on paraphilic disorder (which includes paraphilia) is not reliable, and Arambula's testimony failed to demonstrate

5

that DeLeon is likely to reoffend sexually. DeLeon argues that the evidence is factually insufficient to support a finding that he suffers from a behavioral abnormality because the State "presented only conclusory and baseless expert testimony to support its case" and "the evidence viewed in a neutral light is simply too weak to support a finding that Appellant is an SVP[.]"

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under factual sufficiency review in an SVP commitment proceeding, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP civil commitment case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that

6

makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

During trial, the jury heard DeLeon's testimony that he was convicted in 2003 on two counts of aggravated sexual assault of a child. Furthermore, DeLeon testified that, at the time of trial, he was serving twelve-year sentences for each of those convictions, which he was to serve concurrently. The evidence established that the victims were his girlfriend's eleven-year-old daughter and nine-year-old son. DeLeon testified that he considered his girlfriend to be his common law wife and the children to be his stepchildren, and that he later had two biological children with their mother. DeLeon also admitted to two other juvenile offenses for sexual assault of a child, offenses he committed against two seven-year-old relatives when DeLeon was thirteen or fourteen years old and while he was on juvenile probation.

7

According to DeLeon, he did not know at the time he committed the offenses against his relatives that his actions were wrong because he had previously been sexually assaulted by cousins. DeLeon testified that at the time he offended against his girlfriend's children, he knew that his actions were wrong. At the time of trial, DeLeon did not believe he would ever commit another sexual offense. When he was asked whether he thought he was a sex offender, DeLeon answered, "I believe I'm a person that made a lot of mistakes."

DeLeon told the jury he had completed the classroom component of sex offender treatment but he had not completed the exit interview. DeLeon also testified that he had smoked marijuana "since he was about seven or eight" and was high on all the occasions he molested his victims. DeLeon stated, however, that he "can't blame [his offenses] on marijuana or drugs" but that the offenses were a result of his "irrational thinking and stuff." Although he answered in his deposition that he thought he would continue to use marijuana when he was released, at trial he said he did not think he would use marijuana because he has been sober for ten years and does not get the urge to use marijuana anymore. DeLeon admitted at trial that he found young girls "pretty and stuff like that." DeLeon explained that part of his treatment was formulating a plan for avoiding reoffending and that his plan was to not put himself in "high-risk situations where [he] could have the chances to relapse[.]"

Dr. Michael Arambula, a medical doctor, board certified in general and forensic psychiatry, testified that DeLeon has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Arambula testified that DeLeon is sexually deviant and suffers from pedophilia, personality disorder with antisocial features, and cannabis dependence. Arambula testified that pedophilia is a chronic condition. Arambula explained that although he qualified DeLeon's sexual deviance as pedophilia, he does not believe research supports the Diagnostic and Statistical Manual of Mental Disorders (DSM) criterion for pedophilia which requires at least six months of recurrent, intense arousing fantasies, sexual urges, and behaviors regarding children age thirteen years and younger, because the "at least six months" requirement "doesn't exist anywhere in the literature."

Dr. Arambula testified that DeLeon had not completed sex offender treatment as of the date of trial and that the treatment he had received up until trial was not sufficient as evidenced by the fact that, according to Arambula, DeLeon's testimony showed he has "some big blinders on with regards to the boys that he exploited, and that makes him dangerous." In Arambula's expert opinion, he does not believe that DeLeon has fully acknowledged his sexual deviance or fully internalized what he has learned in treatment. Arambula explained that the following factors increase DeLeon's risk of re-offense: his early onset of sexual deviance, his antisocial features, the fact that when he was young he offended

9

while on probation, the number of victims and the fact that there were multiple acts with at least two of the victims, the offenses took place over a relatively long time span, the age of the victims, he had both male and female victims, the aggressive nature of his acts, the fact that he knew his actions were wrong and wanted to stop offending but could not, his significant areas of denial, his history of unstable relationships, his need for further treatment, and his drug dependence and lack of treatment for it. Arambula explained that he did not score actuarials for DeLeon, but that he reviewed the actuarial testing conducted and referenced in the multidisciplinary team report prepared for the case. Arambula recalled that Dr. Reed had scored DeLeon with a "2" on the Static-99R, which indicated a "[p]robably low risk" of reoffending. Arambula acknowledged that the Static-99R is the most commonly used screen for predicting a sex offender's risk for recidivism, but he stated that the test's reliability depends on the data and the facts of the individual case, and that the authors of the test did not include factors that are hard to measure – such as denial. Arambula testified that, "based on the information and history, [DeLeon] carries a significant risk to reoffend."

On appeal, DeLeon argues Dr. Arambula's testimony has no stated basis in his field and it is too conclusory to support the jury's verdict. We disagree. Dr. Arambula is board certified in general and forensic psychiatry. In reaching his conclusions, Arambula discussed his training and experience related to evaluating

10

whether a person has a behavioral abnormality, as well as the information he reviewed in DeLeon's case, and he related the information he reviewed to his opinions. The testimony shows that Arambula interviewed DeLeon, reviewed records that are relevant to DeLeon's criminal history, and he reviewed the details of DeLeon's offenses involving sexually violent crimes. The records Arambula reviewed are the type of records that experts in Arambula's field rely on in forming opinions. Arambula also explained that he performed his assessment in DeLeon's case in a manner that is consistent with the training Arambula had received as a professional.

After Dr. Arambula explained his methodology and how he applied that methodology to DeLeon, the jury heard Arambula testify that in his professional opinion DeLeon has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. The jury heard evidence of DeLeon's risk factors, sexual offenses, and diagnoses. The jury heard DeLeon's testimony and admissions and Arambula's testimony that there is a significant risk that DeLeon will reoffend. We conclude that Arambula's testimony was not baseless nor was it too conclusory to support a finding that DeLeon suffers from a behavioral abnormality.

DeLeon also argues that Dr. Arambula failed to demonstrate that DeLeon is likely to reoffend sexually. According to DeLeon, Arambula failed to explain the

11

weight of each factor that he believed was related to sexual recidivism or how the factors combined to make DeLeon likely to engage in a predatory act of sexual violence. DeLeon also asserts that Arambula failed to cite any specific research supporting the risk factors he considered.

The record indicates that Dr. Arambula explained to the jury that pedophilia is a chronic condition, he discussed DeLeon's risk factors for reoffending, and he stated that, based on his experience and training, he believes DeLeon "carries a significant risk to reoffend." We conclude that Arambula's testimony and conclusions represent "a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206. In its exclusive role as the sole judge of the credibility of the witnesses and the weight to be given their testimony, the jury could have resolved any conflicts and contradictions in the evidence by believing all, part, or none of the witness's testimony, and by drawing reasonable inferences from basic facts to ultimate facts. *Mullens*, 92 S.W.3d at 887. The jury heard evidence of DeLeon's offenses, DeLeon's own testimony, and the expert's testimony regarding his risk for reoffending. Serious difficulty controlling behavior can be inferred from DeLeon's past behavior, his own testimony, and Arambula's evaluation of DeLeon. *See In re Commitment of Washington*, No. 09-11-00658-CV, 2013 Tex.

App. LEXIS 7211, at *16 (Tex. App.—Beaumont June 13, 2013, pet. denied) (mem. op.).

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that DeLeon is a sexually violent predator; therefore, the evidence is legally sufficient. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885. Furthermore, weighing all of the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. Issues two and three are overruled.

## IN RE COMMITMENT OF RICHARD

In his fourth issue, DeLeon contends that this Court's decision in *In re Commitment of Richard* renders Chapter 841 unconstitutional. We recently addressed and rejected this argument. *See In re Commitment of Lucero*, No. 09-14-00157-CV (Tex. App.—Beaumont February 5, 2015, no pet. h.) (mem. op.). For the same reasoning outlined in *Lucero*, we reject DeLeon's constitutional arguments and overrule issue four. Having overruled all of DeLeon's issues, we affirm the trial court's judgment.

AFFIRMED.

                                 _____

                                    LEANNE JOHNSON
                                       Justice

Submitted on November 21, 2014
Opinion Delivered February 26, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.