In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00404-CV

_____

IN RE COMMITMENT OF RONALD GENE WATTS

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 14-03-03233 CV

## MEMORANDUM OPINION

The State of Texas filed a petition to commit Ronald Gene Watts (Watts) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found appellant to be a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Watts appeals from the final judgment and challenges the legal and factual sufficiency of the evidence to support a finding that he suffers from a behavioral abnormality. We affirm.

1

At the time of trial, Watts was fifty-eight years old, and he was serving two concurrent fifteen-year sentences for aggravated sexual assault of a child and failure to register as a sex offender. Watts was previously convicted of rape, solicitation of a minor, indecency with a child by exposure, and three counts of indecency with a child by contact. His victims' ages were six, eight, nine, and thirteen, and included children that were not related to him, two of his own children, a sister-in-law, a niece, and a granddaughter. Watts testified at trial that he believes he has sexually molested eight children, and he admitted that he is a sex offender. Watts participated in two prior sex offender treatment programs after earlier offenses, but he reoffended after receiving treatment. During his current incarceration, Watts was enrolled in an eighteen-month sex offender treatment program (SOTP program). In his responses to Requests for Admission, he admitted receiving major disciplinaries, and at least four minor disciplinaries, while in prison.

In 1973, Watts testified that he was seventeen years old when he raped an eight-year-old girl. Watts had been watching girls walk to and from school and planning to rape one of them, and he selected the eight-year-old girl because she was "walking alone and she was vulnerable." Watts received a ten-year probated

sentence for the rape of the eight year old, and Watts entered into a four to six month sex offender treatment program, where he admits he learned that it was wrong for him to have sexual interest in children and that his actions hurt his victim.

In 1974, while he was on probation for rape, Watts offered a little girl money to lift up her blouse so he could see how she had developed and how she compared to his first victim. Watts testified that in 1979, he called his thirteen-year-old sister-in-law into the bathroom and exposed himself to her. At trial, Watts admitted that he had also fondled the child's breasts. Watts was then convicted of indecency with a child by exposure and he again received a ten-year probated sentence for that offense.

While Watts was on probation for the offense of indecency by exposure, Watts committed another offense against an eight-year-old girl that he met at the bowling alley. On that occasion, Watts offered the eight-year-old child money to lift up her shirt. Watts admitted that at the time he had been having sexual thoughts about young girls, including thoughts about friends of his own daughter. The court convicted Watts of solicitation of a child, revoked his probation, and sentenced Watts to seven years in prison.

Watts received early parole from the solicitation offense, and as part of his release he was ordered to attend sex offender treatment. During his treatment, he again learned about how much pain he was causing and that it was wrong for him to touch young girls. While he was on parole, Watts sexually offended against his eight-and nine-year-old daughters and against his six-year-old niece on several occasions. For his offenses against his own children and his niece, Watts was convicted in 1987 of indecency with a child, and he received a ten-year sentence.

After being released from the 1987 indecency charges, in 2002 Watts was arrested for failure to register as a sex offender. He had been driving to a local pool where he was playing with the children. The pool management asked him to leave, and a couple of days later he went to another pool and began playing games with the children at that pool. He knew that because he was a sex offender it was a bad idea for him to be playing games with children at the pools, but he did it anyway. Watts was arrested for failure to register as a sex offender after he left one of the pools. While he was out on bond for the failure to register as a sex offender, Watts then committed an aggravated sexual assault against his eight-year-old granddaughter. Watts was convicted of the aggravated sexual assault and the failure to register as a sex offender, and he was returned to prison on a fifteen-year sentence.

4

Watts agreed that he is sexually attracted to young girls, that he still has sexual thoughts about his victims, and that he becomes sexually aroused by thoughts of his victims. Watts further testified as follows:

[State's Counsel:] And you believe that you need to be in sex offender treatment because your sex offending "has to stop." Do you recall making that statement?

[Watts:] Yes.

[State's Counsel:] Okay. You would agree that being around any children is a high-risk situation for you?

[Watts:] If -- any children that are -- that are alone.

[State's Counsel:] Okay. And that's always been a high-risk situation for you. Correct?

[Watts:] Yes.

[State's Counsel:] Okay. But that is a situation you have not been able to avoid. Correct?

[Watts:] Yes.

Nevertheless, Watts testified that his current SOTP treatment program is different than his earlier two programs, that he has identified most of the things that contribute to the cycle of his sexual offending, that he feels remorse for his victims, and that he knows he has triggering events such as drinking excessively, reading pornography, going to public pools, seeing girls in bikinis, working "too hard[,]" his first wife not taking care of the children, and being under stress.

5

Dr. David Self, a board-certified psychiatrist, testified on behalf of the State. Self has been in practice since 1988, and he was previously employed as the Clinical Director at Rusk State Hospital. Self performed a forensic psychiatric review of Watts, which Self explained means he brought "the knowledge base and the expertise of psychiatry to a question of law in order to assist the trier of fact, the jury, in arriving at an answer to a question." Dr. Self examined and evaluated Watts to determine whether Watts suffers from a behavioral abnormality.

According to Dr. Self, a "behavioral abnormality" is a term that is defined in the Health and Safety Code, Chapter 841. Self paraphrased and explained to the jury that it includes a congenital or acquired condition that a person has:

> a condition that by affecting a person's volitional, which means their will, their ability to control their behavior or emotional capacities, the ability to control their emotional states, makes -- predisposes them to commit acts of sexual violence to the extent that they become a menace to the health and safety of another person.

Dr. Self has evaluated people for behavioral abnormalities since 2009, and he explained to the jury that his methodology is something he calls "structured clinical judgment," which includes reviewing records and documentation, interviewing the person, reviewing test scores, and performing an evaluation. Self indicated that his methodology is the type used and relied on by others in his field performing behavioral abnormality evaluations. Self conducted an interview of

6

Watts. The interview was performed in accordance with Self's training as a psychiatrist and in accordance with the accepted standards in the field of forensic psychiatry. Self also described the records he reviewed and relied on for this case, as part of his standard methodology, which are the same type of records typically reviewed and relied upon in behavioral abnormality evaluations.

Dr. Self diagnosed Watts with pedophilia and pedophilic disorder. According to Self, pedophilia persists through the entire life span, "stronger than any other disorder of this sort." Dr. Self reached the professional opinion, based upon his education, training, and experience and the methodology he used to evaluate Watts that Watts "has the behavioral abnormality described in Chapter 841."

Dr. Self explained that risk factors are "things that have been found through empirical research to be associated with increased risk of re-offense." The first broad category of risk factors Self identified for Watts includes Watts's sexual criminal history. Watts has offended against prepubescent girls. While, according to Dr. Self, this puts Watts at less risk than persons who offend against little boys, Watts has offended against both family members and strangers. The fact Watts has offended against strangers places Watts at a higher risk to reoffend than someone who may only have offended against family members. Watts has also displayed

7

some child-hunting behaviors, which also increase his risk. Watts's risk is further increased by the young age at which he started offending.

The next risk category is sexual deviance. Watts has a sexual deviance in that he has committed sexual offenses against young children, which Dr. Self diagnosed as pedophilic disorder. Watts also has "attitudes tolerant of sexual assault."

Another risk category for Self addressed for Watts pertains to "intimacy deficits." Watts has been married twice, and Watts describes himself as "feeling inadequate, rejected by the world of adult sexuality." Dr. Self testified that Watts "identifies with children to an extent that's really troublesome." Self explained that Watts's belief that he can "control these children is very attractive and central to [Watts] . . . he more emotionally identifies with children than he does with adults."

According to Dr. Self, another additional broad category or risk for Watts's would be Watts's response to treatment and supervision. Watts has had two rounds of sex offender treatment, and Watts reoffended "during the second outpatient treatment." Self testified that during Watts's second outpatient treatment Watts was also reading child porn novels while he was going to treatment and "was sexually offending against those three little girls for the months before the day they filed

[charges] on him . . . so we've got him flagrantly sex offending while he's in treatment."

Finally, Dr. Self looked at whether Watts had violations of his conditional release, while on probation, parole, or bond. According to Dr. Self, "[Watts] has been given a lot of chances on probation and parole and he has botched all those chances by reoffending." Self explained that when a person "can't behave in that circumstance, you have a serious difficulty controlling your behavior, serious difficulty."

Watts's age, fifty-eight years old, along with the fact he is in sex offender treatment at the penitentiary, according to Dr. Self, would be positive factors or weigh in his favor. However, due to the fact that Watts has "failed miserably" the sex offender treatment twice before by re-offending, Dr. Self is not very hopeful that the current treatment will be successful.

LEGAL AND FACTUAL SUFFICIENCY

Watts contends the evidence is legally and factually insufficient to support the jury's verdict because the State failed to present evidence demonstrating that Watts suffers from a behavioral abnormality. Watts specifically argues that the evidence is legally insufficient to support a finding that he suffers from a behavioral abnormality because Dr. Self did not have any basis for his opinion

9

other than his own conclusory testimony in that he never testified what research he relied upon for his testimony, and therefore Watts argues that Dr. Self's opinion that Watts suffers from a behavioral abnormality is wholly conclusory, speculative, and legally insufficient. Watts also argues that the evidence is factually insufficient because Dr. Self provided no basis other than his own "*ipse dixit*." Watts also argues that the great weight and preponderance of the evidence supports a finding that he has learned to control his behavior by learning and internalizing concepts from his current sex offender treatment program, and that the weak evidence against him in this case presents a risk of injustice strong enough to compel a new trial.

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review in an SVP commitment proceeding, we weigh all the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk

of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP civil commitment case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

During trial, the jury heard Watts's testimony that he committed his first sexual offense when he was seventeen years old. His victim was an eight-year-old girl that he had been observing as she walked to school. Watts was convicted in

2003 for aggravated sexual assault of a child. Furthermore, Dr. Self, a medical doctor, board certified in general psychiatry, testified that Watts has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Self testified that Watts has engaged in sexually deviant acts and suffers from pedophilia, a chronic condition. Watts has shown that, despite repeated chances and participation in different sex offender treatment programs, he cannot control his behavior.

Dr. Self explained that the following factors increase Watts's risk of re-offense: his early age of the onset of sexual offending, his antisocial features, the fact that when he was young he offended while on probation, the number of victims and the fact that Watts had multiple acts with at least two of the victims, the age of the victims, the aggressive nature of his acts, his history of unstable relationships, his need for further treatment, and his re-offense even while he was in the sex offender treatment program and while on parole or probation for his earlier offenses. Dr. Self explained that he reviewed the actuarial testing referenced in the multidisciplinary team report prepared for the case. Watts scored a "[s]ix" on the Static-99R, which indicated a "high" risk of reoffending. On appeal, Watts argues Dr. Self's testimony has no stated basis in his field and it is too conclusory to support the jury's verdict. We disagree. Dr. Self is board certified in general

psychiatry. In reaching his conclusions, Dr. Self testified that he applied training and experience related to evaluating whether a person has a behavioral abnormality, as well as the information he reviewed in Watts's case in forming his opinions. The testimony shows that Dr. Self interviewed Watts, reviewed records that are relevant to Watts's criminal history, and he reviewed the details of Watts's offenses involving sexually violent crimes. The records Dr. Self reviewed are the type of records that experts in Self's field rely on in forming opinions. Self also explained that he performed his assessment of Watts in a manner that is consistent with the accepted standards in the field of forensic psychiatry.

After Dr. Self explained his methodology and how he applied that methodology to Watts, the jury heard that in his professional opinion Watts has a behavioral abnormality that makes Watts likely to engage in predatory acts of sexual violence. The jury heard evidence of Watts's risk factors, sexual offenses, and diagnoses. The jury heard Watts's testimony and admissions and Dr. Self's testimony that there is a significant risk that Watts will reoffend. We conclude that Dr. Self's testimony was not baseless nor was it too conclusory to support a finding that Watts suffers from a behavioral abnormality.

Watts also argues that Dr. Self failed to demonstrate that Watts is likely to reoffend sexually. According to Watts, Self failed to cite the specific research

13

supporting the risk factors he considered. The record indicates that Dr. Self explained to the jury that pedophilia is a chronic condition, he discussed Watts's risk factors for reoffending, and he stated that, based on his experience and training, Watts suffers from a behavioral abnormality and that he has a serious difficulty controlling his behavior. Dr. Self's testimony and conclusions represent "a reasoned judgment based upon established research and techniques for his profession and [were] not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Watts is a sexually violent predator, and the evidence is legally sufficient to support the jury's finding. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885. On this record, the evidence allowed the jury to draw reasonable inferences from basic facts to determine ultimate issues and to resolve conflicts and contradiction sin the evidence by believing all, part or none of the testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *20 (Tex. App.—Beaumont Jan.

14

15, 2009, no pet.) (mem. op.). We further conclude that, as sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Watts suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 Tex. App. LEXIS 4750, at *8 (Tex. App.—Beaumont May 1, 2014, pet denied) (mem. op.); *see also Mullens*, 92 S.W.3d at 887. Based on the jury's findings, the jury implicitly determined that Watts has serious difficulty controlling his behavior and is likely to commit predatory acts of sexual violence directed toward individuals for the primary purpose of victimization. *See Muzzy*, 2014 Tex. App. LEXIS 4750, at **8-9. The jury could infer serious difficulty controlling behavior based not only on the expert's testimony, but also on Watts's past behavior and testimony. *See id.* Weighing all of the evidence, we also conclude the verdict does not reflect a risk of injustice that compels ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule both issues raised by Watts, and we affirm the trial court's judgment.

     AFFIRMED.

_____
LEANNE JOHNSON
Justice

15

Submitted on March 26, 2015
Opinion Delivered August 13, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.