In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00159-CV
_____


IN RE COMMITMENT OF JOHN LUCERO

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-08-09024 CV
_____

**MEMORANDUM OPINION**

John Lucero challenges his commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (the SVP statute). In two issues presented for his appeal, Lucero challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. We hold the evidence is legally and factually sufficient, and we affirm the trial court's judgment and order of civil commitment.

In the trial of a civil commitment filed under Chapter 841 of the Texas Health and Safety Code, the State must prove, beyond a reasonable doubt, that the

person to be civilly committed is a sexually violent predator. *Id.* § 841.062(a). When we consider a challenge to the legal sufficiency of the evidence supporting the jury's finding that a person is a sexually violent predator, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). As the factfinder, the jury has the responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a).[1] A "'[b]ehavioral abnormality' means a congenital or acquired

---

[1]Lucero does not challenge his status as a repeat sexually violent offender in his appellate brief.

condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* at § 841.002(2). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.— Beaumont 2003, pet. denied).

Lucero contends the evidence is legally and factually insufficient to support the jury's verdict because the State failed to present evidence that he is volitionally impaired.[2] He argues the State's experts neither asserted an opinion nor offered any information from which a jury could reach a conclusion that he currently has serious difficulty controlling his behavior.

Lucero was convicted on two counts of indecency with a child by contact for offenses he committed in 2006 against two different eight-year-old victims. Lucero, who was twenty-seven years of age at the time of the civil commitment trial, admitted to having had sexually arousing fantasies involving sexual activity

---

[2]Lucero did not challenge the sufficiency of the evidence during the trial, but he presented legal and factual sufficiency arguments in a post-judgment motion for new trial.

3

with prepubescent female children in the past, beginning when he was age sixteen. When asked if he still has a sexual preference for little girls, Lucero replied, "Not as strong as it was." Lucero admitted to still engaging in sexual fantasies about adolescent girls at the time of an interview eight or nine months before trial, but in the testimony he gave during the trial, he claimed his most recent sexual fantasy about an under-aged girl occurred approximately eighteen months before his trial. Lucero stated that he completed a sex offender treatment program, and that he was able to work through his sexual thoughts about thirteen and fourteen-year-old girls. Lucero admitted to giving untruthful answers in his sworn deposition, but he explained that at that time, he was still in denial of his illness and, since that time, he has neutralized many of the deviant fantasies he experienced in the past.

Lucero further admitted that, in the past, he had a problem controlling his behavior. He started having fantasies of prepubescent girls when he was about sixteen years old. Sexual fantasizing about under-aged girls preceded the sexual offenses for which he was convicted. When the urge became too great, Lucero acted out on his urges. He realized that what he was doing was wrong, but he could not control himself. Lucero stated that he was diagnosed with impulse control disorder in his early teens. Having completed a nine-month sex offender treatment program, Lucero believes he now has good control of his sexual urges.

4

Before his incarceration, Lucero spent four or five months in Cypress Creek Rehabilitation Center, where he was diagnosed with bipolar disorder and impulse control disorder. Lucero testified that he is currently treated with lithium. He started on lithium when he entered prison, ceased treatment because he thought he was cured, and resumed his medication three months before trial because he realized he is not cured.

Three experts testified at trial. The State presented opinion testimony from a psychologist, Dr. Christine Reed, and a psychiatrist, Dr. Michael Arambula.[3] A psychologist, Dr. Marisa Mauro, testified on behalf of Lucero.

Dr. Arambula testified that he evaluated Lucero for a behavioral abnormality and he was able to form an opinion that Lucero has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Arambula explained that he does not predict what the person will do in the future, but, focusing on the person as they presently are, Dr. Arambula assesses the risk associated with the person because of his illness. Factors that formed the basis of Dr. Arambula's opinion include Lucero's sexual deviance—pedophilia—which according to Dr. Arambula is one of the most significant risk factors for recidivism. Dr. Arambula noted that Lucero's sexual thoughts about children

_____

[3]Lucero does not challenge the reliability of the experts or their methodology in his appellate brief.

5

began when he was a teenager, several years before he was arrested for the sexual offenses, and Lucero admitted that those thoughts continued while he was in prison. Dr. Arambula explained that sexual arousal such as that Lucero admitted to experiencing with eight-year-old children represented a large risk for recidivism because children have no secondary sex characteristics and the sexual pathology rests entirely in the perpetrator's imagination.

Lucero's personality pathology presents an aggravating factor. Dr. Arambula diagnosed Lucero with personality disorder not otherwise specified because Lucero displays the confusion and anger problems that are the hallmark of borderline personality disorder. Dr. Arambula noted that Lucero had anger problems since his youth, having been diagnosed with an explosive disorder. According to Dr. Arambula, the intensity of mood change associated with explosive disorder and borderline personality disorder causes people with that pathology to do "some pretty surprising things because they just lose control." Dr. Arambula was disappointed with Lucero's deposition testimony because Lucero exhibited no recognition of his offense cycle although he had received months of sex offender treatment. Dr. Arambula stated it was very obvious that Lucero had not internalized the sex offender treatment material and was not managing his illness. Lucero's sex offender treatment notes indicated he had been actively participating

in the program, and Dr. Arambula surmised that the lack of progress was due to Lucero's personality disorder and not to a failure of the treatment program. Lucero's young age—twenty-seven—provided another aggravating factor, although Dr. Arambula recognized that older men who are pedophiles are at about the same risk as younger men.

Dr. Arambula identified Lucero's protective factors, which include his taking courses to improve his employment skills and parenting skills. Dr. Arambula was not sure why Lucero would take parenting courses when he is childless. He noted that Lucero graduated from high school and has a supportive family. He added that taking medication would help with the instability of Lucero's personality. Dr. Arambula testified that civil commitment is for particularly dangerous sex offenders with numerous risk factors for recidivism because their illness is more severe. In his opinion, Lucero falls within that category not only because he committed the two sexually violent offenses, but also because Lucero's history showed that he had been struggling with his pedophilia at least since he was seventeen years old and his past indicated that his illness is more severe, to the point that he had been suicidal because he felt he could not control it. This severe condition was further aggravated by reckless substance abuse, an

unstable personality, and disappointing feedback about Lucero's progress in treatment.

Based on her education, training, experience, and methodology, Dr. Reed testified that she also reached the opinion that Lucero has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Reed explained that pedophilia is a chronic condition that can affect a person's emotional or volitional capacity. In response to a question asking whether she saw present-day signs and symptoms of Lucero's pedophilia, Dr. Reed replied that it is a chronic condition and within the last year before trial, Lucero reported still having the sexual thoughts or fantasies. Borderline traits associated with Lucero's personality disorder include impulsivity and self-damage associated with his recurrent suicidal threats, affective instability demonstrated by unstable moods, and inappropriate intense anger or difficulty controlling his behavior throughout his life. During their interview, which occurred approximately eight months before the trial, Lucero described violent incidents that occurred while he was in prison and explained to Dr. Reed that he has a problem with his temper. Lucero told her that he tried to commit suicide two weeks before their interview. During their interview, Lucero displayed no signs of anxiety until Dr. Reed pressed him about his offenses, at which time he jumped up and claimed he was about to have a panic

attack. Dr. Reed considered this behavior to be a function of his personality disturbance, which significantly impairs his judgment. Although it did not change her opinion, Dr. Reed acknowledged that Lucero did not receive any disciplinary action for sexual misconduct while he was imprisoned.

Dr. Mauro, testifying on behalf of Lucero, stated her opinion that Lucero does not have a behavioral abnormality. In evaluating a person for a behavioral abnormality, she considers whether the person is on medication for a mental illness. Dr. Mauro explained that medication might remedy the mental illness and remove it as a consideration for determining whether a behavioral abnormality exists. Dr. Mauro made a provisional diagnosis of pedophilic disorder nonexclusive, because Lucero admitted to having pedophilic thoughts over a long period of time but he engaged in the acts over a short period of time when he was only twenty years old and, he indicated he is also attracted to adult females. Dr. Mauro did not make a personality disorder diagnosis because as a twenty-year-old offender, Lucero was too young to have demonstrated a persistent trait pattern across time.

Dr. Mauro stated that Lucero's lack of non-sexual criminal history was important because general criminality is associated with the risk of recidivism. According to Dr. Mauro, Lucero is probably capable of maintaining a stable

9

lifestyle and employment if he avoids drugs and alcohol. She stated that Lucero has a very extensive substance abuse history and she noted that substance abuse makes a differential diagnosis difficult because his behavior could be caused either by substance abuse or by an underlying mental condition. Dr. Mauro gave Lucero a score of 4 on the Static-2002R, which she stated was associated with a low to moderate risk of recidivism and a predicted rate of recidivism of 3.6 percent. In Dr. Mauro's opinion, a 3.6 percent predicted rate of recidivism did not equate to "likely." Dr. Mauro recognized Lucero's pedophilia as a risk factor, but she stated his mental health history was a greater risk and noted that Lucero received past mental health treatment and medication that stabilized his mental illness. Lucero's completion of the prison sex offender treatment program was significant because researchers have found it reduced observed recidivism rates by about ten percent. Dr. Mauro observed that Lucero lied both in his testimony and to her. In her opinion, she could not state whether Lucero had serious difficulty controlling his behavior in the past, but she does not believe that Lucero has a behavioral abnormality now. She stated that she had no information that Lucero actually preferred children to adults as sexual partners.

Lucero contends the State's expert witnesses only cursorily addressed volitional impairment and he argues that they failed to present a basis for

10

concluding Lucero has serious difficulty controlling his behavior. Lucero explained to the jury that he knew what he was doing was wrong but he could not control himself in 2006 when he committed the sexually violent acts that resulted in his incarceration from 2007 until the time of the civil commitment trial. By his own admission, Lucero had an impulse disorder. Lucero's testimony indicates he habitually engaged in sexual arousal to fantasies about under-aged girls when he committed the offenses and that the fantasies continued during his incarceration. Lucero claimed that his sexual preference for little girls is not as strong as it had been in the past, but he did not suggest that he no longer has such a preference.

Dr. Mauro agreed that pedophilia is thought to be a lifelong, chronic condition, but she stated it was impossible for her to state whether Lucero had serious difficulty controlling his behavior when he committed the sexually violent offenses because she did not evaluate him at that time. Because Dr. Arambula's interview with Lucero occurred approximately four months before trial, Lucero argues that Dr. Arambula could not point to any evidence of volitional impairment at the time of trial. Dr. Arambula stated that he cancelled his plans to conduct a second interview with Lucero after reviewing Lucero's deposition testimony given two months before trial and observing that Lucero displayed no progress in sex offender treatment. According to Dr. Arambula, after several months into the

11

program, Lucero had not internalized the treatment material notwithstanding his active participation in the program. Lucero told the jury he has progressed since his deposition, but the jury could reasonably have rejected his statement, especially in light of Lucero's and Dr. Mauro's testimony that Lucero lied about his condition and Dr. Reed's testimony that Lucero's inconsistent testimony made Lucero an unreliable source regarding whether he can control himself.

The jury heard conflicting opinion testimony from Dr. Arambula and Dr. Mauro concerning the danger Lucero currently presents to the public, but the jury could reasonably accept Dr. Arambula's assessment that Lucero falls within the subset of dangerous sex offenders who have numerous risk factors for recidivism, and reject Dr. Mauro's opinion that Lucero is not currently suffering from a behavioral abnormality that makes him likely to commit a sexually violent offense.

Dr. Arambula's and Dr. Reed's opinion testimony represents "a reasoned judgment based upon established research and techniques for his [or her] profession and not the mere *ipse dixit* of a credentialed witness." *Day*, 342 S.W.3d at 206. The jury, acting in its exclusive role as the sole judge of the credibility of the witnesses and the weight to be given their testimony, resolved any conflicts and contradictions in the evidence and accepted the opinions of the State's experts. *See In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012,

pet. denied). Viewing all the evidence in the record in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Lucero is a sexually violent predator. *See Mullens*, 92 S.W.3d at 885. Furthermore, weighing all of the evidence, we conclude the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We hold the evidence is legally and factually sufficient, overrule Lucero's issues, and affirm the trial court's judgment and order of civil commitment.

    AFFIRMED.

_____<br>
CHARLES KREGER<br>
Justice

Submitted on January 20, 2015<br>
Opinion Delivered May 14, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.