In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00407-CV

_____


IN RE COMMITMENT OF JOHN FRANKLIN WILLIAMS JR.

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-02-01500-CV**
_____

**MEMORANDUM OPINION**

John Franklin Williams Jr. appeals from a judgment on a jury verdict that resulted in his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.081(a) (West Supp. 2015). Williams challenges the legal and factual sufficiency of the evidence in three issues. We overrule the issues and affirm the trial court's judgment.

**Standard of Review**

Williams contends the evidence is legally and factually insufficient to support the jury's unanimous verdict, which found that Williams is a sexually

violent predator because: (1) Williams "has no diagnosable mental disorders, mental conditions, or predispositions to commit predatory acts of sexual violence[;]" (2) the State did not provide sufficient facts to prove beyond a reasonable doubt that he is likely to reoffend; and (3) the State failed to prove that Williams committed his crimes for the primary purpose of victimization.

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for civil commitment as a sexually violent predator. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). As the factfinder, the jury has the responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. at 887. Under a factual sufficiency review in a civil commitment proceeding, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In a civil commitment proceeding under Chapter 841 of the Texas Health and Safety Code, the State must prove, beyond a reasonable doubt, that a person is

2

a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender[1] and he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a) (West Supp. 2015). A "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

### Summary of the Evidence

Through responses to requests for admissions and penitentiary packets that were admitted into evidence, the jury learned that Williams had been convicted three times for indecency with a child. The indictments alleged Williams committed these offenses in 1982, 2000, and 2003. Williams was out on bond for

---

[1] Williams does not challenge his status as a repeat sexually violent offender in his appellate brief.

the second offense when he offended against his third victim. Two of his victims were twelve years old when he molested them and one was fifteen. Williams was thirty-four years old when he committed the first offense, fifty-two when he committed the second offense, and fifty-five when he committed the third offense. As to one of the offenses, Williams judicially admitted that he engaged in sexual contact with the child to arouse and gratify his sexual desire. Additionally, Williams admitted that he had never received any sex offender treatment until he started a four-month-long sex offender education program a few weeks before his trial.

The State's expert, Dr. David Self, a psychiatrist who evaluated Williams, testified that based upon his education, training, experience, and the methodology he employed in the case, it was his expert opinion that Williams suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[2] Dr. Self explained that when he evaluates a person for civil commitment as a sexually violent predator, he performs a psychiatric screening in which he looks for the presence or absence of major psychiatric illness. In this case, Dr. Self considered a prior evaluation performed by Dr. Charles Woodrick, a psychologist, as well as the facts and data contained in court records, police reports, victim

---

[2] Neither Dr. Self's qualifications nor his methodology are challenged in this appeal.

4

statements, and depositions. Dr. Self also conducted a personal interview of Williams.

Dr. Self testified that the facts and details of a person's sexual offenses are important in an evaluation. He stated that a person's non-sexual criminal history also provides insight into a person's criminality. In this instance, Williams had five intoxication offenses and several arrests for fighting. Williams claimed he was intoxicated when he committed his sexual offenses. According to Dr. Self, Williams's biggest risk factor was his prior sexual criminal history, which included two victims that would be considered prepubescent. In Dr. Self's opinion, Williams meets the criteria for pedophilic disorder, which means for over a period of at least six months a person has recurrent, intensely sexually-arousing fantasies, urges, or behaviors involving sexual activity with prepubescent children or children generally thirteen or younger. He testified that Williams's disorder was of a non-exclusive type because Williams also had sexual relationships with adult females. According to Dr. Self, for purposes of diagnosing pedophilic disorder, the victim-age cut-off of age thirteen has less to do with developing secondary sex characteristics and more to do with brain development.

Dr. Self also diagnosed Williams with personality disorder not-otherwise-specified with antisocial traits. Dr. Self expressed some reservation about this

diagnosis, because Williams did not show a conduct disorder in his youth, and he had a spotless prison disciplinary record. Williams demonstrated an attitude tolerant of sexual assault, which means he fends off the shame typically associated with sexual assault. As an example, Dr. Self referred to Williams's trial testimony that he was intoxicated and fell and his hand went into the girl's pants. Alcohol abuse was a major recurring problem for Williams. According to Dr. Self, alcohol is a disinhibitor that negatively affects a person who is already impulsive. Dr. Self also found it significant that Williams committed a sexual offense when he was out on bond for a previous sexual offense because it indicated an inability to control his behavior. Additionally, Dr. Self noted that Williams offended against the children at a time when he reported having daily sexual relations with his wife, which indicated a high sex drive and a lack of control.

Actuarial instruments applied by Dr. Woodrick and considered by Dr. Self in his evaluation gave Williams a score of 1, at low risk to reoffend. Dr. Self noted that Dr. Woodrick found Williams has pedophilic disorder and mixed personality disorder, as well as a behavioral abnormality. Williams's protective factors include his age, sixty-seven, but Dr. Self noted that Williams was committing sexual offenses against children at the age of fifty-six.

Dr. Marisa Mauro, a psychologist, testified as an expert on behalf of Williams. She used an actuarial approach that she adjusted for clinical risk factors based on research. In her opinion, Williams does not have a behavioral abnormality. Dr. Mauro stated that pedophilic disorder, nonexclusive type, was an inappropriate diagnosis for Williams in this case because the victim of his most recent offense might not have been prepubescent, and the offending behavior incidents occurred nearly twenty years apart. In her opinion, Williams does not have pedophilia, but he acted indiscriminately. She found Williams has alcohol use disorder and suggested that that explains his history of intoxication offenses and probably functioned as a disinhibitor with his sex offenses. In Mauro's opinion, Williams's risk would not be elevated during times he is not using alcohol. Dr. Mauro considered Williams's history of three marriages in which he maintained sexual relationships with adult females to be a protective factor, although stress from his wives' infidelity may have been a destabilizer for Williams. Dr. Mauro noted that Williams tended to shift blame onto his victims, but sex offender recidivism research found no statistically significant relationship between denial and sexual recidivism. Dr. Mauro saw no indication that Williams was unable to control his sexual behavior.

Dr. Mauro disagreed with Dr. Self's diagnosis of personality disorder not otherwise specified with antisocial traits because there was no evidence of the traits of that disorder other than Williams's sex offending. She contends that a person with that disorder would not have Williams's long work history and would tend to experience disciplinary problems in prison. In Dr. Mauro's opinion, Williams's history of fighting was likely attributable to his alcohol use disorder.

Regarding Williams's statistical risk of reoffending, Dr. Mauro stated that she considered that he offended late in life, but she also considered that thirteen or fourteen years had passed since his last offense. She agreed that persistence after punishment is a risk factor, but statistically it is a small factor. The presence of a non-relative victim was a risk factor, the lack of male and stranger victims decreased Williams's risk. Ultimately, Dr. Mauro gave Williams a score of zero, which using normative data, provided an expected five-year recidivism rate of 2.8 percent.

**Arguments of the Parties**

Williams argues he has no diagnosable mental disorders, mental conditions, or predispositions to commit predatory acts of sexual violence. He contends the facts surrounding Dr. Self's diagnoses are insufficient to support pedophilic and personality disorders. He argues that two separate instances of child molestation

occurring twenty years apart does not establish that he had recurring urges or fantasies over a six month timeframe. Williams argues that Dr. Self's mental disorder diagnoses supplied the only evidence that Williams is predisposed to sexual violence, and without a sufficient basis for those diagnoses, Dr. Self's opinion provides no evidence that Williams is a sexually violent predator. Also, Williams argues the State provided insufficient facts to clinically and accurately show that he has a pedophilic disorder or a personality disorder and that his previous criminal behavior could instead be attributable to alcohol abuse and anger issues.

Williams argues that if we find sufficient evidence that he has pedophilic and personality disorders, the evidence is still insufficient to prove beyond a reasonable doubt that he is likely to reoffend. He contends the risk factors identified by Dr. Self are either not risk factors at all or they have been determined through the application of actuarial tests to predict a low risk of reoffending. He argues the State did not provide sufficient facts to prove that he is likely to reoffend.

Williams also argues the State failed to prove that he committed the sexual offenses for the primary purpose of victimization. He notes the State read into the record Williams's admission that he engaged in sexual contact with the intent to

arouse or gratify his sexual desire. From this, he contends the State admitted his primary purpose in committing his past crimes was to gratify his sexual desires and not to victimize the children. He argues the State did not provide factually sufficient evidence that he committed his crimes for the primary purpose of victimization.

The State responds that a diagnosis is not required to find that someone has a behavioral abnormality, but at any rate, Dr. Self's evaluation of Williams's mental condition is supported by the record. The State argues the jury could reject Dr. Mauro's opinion that Williams does not have pedophilic or personality disorders and her opinion that Williams is not likely to reoffend. Also, the State argues the evidence need not show that the person's past offenses were committed for the primary purpose of victimization. The State argues that Dr. Self's opinion that Williams suffers from a behavioral abnormality that makes him likely to engage in a sexually violent offense implicitly includes that the act would be for the primary purpose of victimization. The State concludes the jury heard the conflicting opinions of the experts and each expert's rationale and support for that opinion, then accepted one and rejected the other.

**Sufficient Evidence**

"A medical diagnosis of a person's mental health may certainly inform an assessment of whether he has an SVP's behavioral abnormality, but the principal issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct." *In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). Therefore, "[a] diagnosis of a mental disorder is not a prerequisite for civil commitment." *In re Commitment of Pickens*, No. 09-14-00391-CV, 2016 WL 821426, at *2 (Tex. App.—Beaumont Mar. 3, 2016, no pet. h.) (mem. op.). Where the expert witness provides a basis for his or her opinion and that basis is supported by the record, the jury resolves any conflicts or contradictions with respect to the expert's testimony. *In re Commitment of Rushing*, No. 09-11-00268-CV, 2012 WL 4466421, at *5 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.).

In this case, the diagnosis of mental disorders informed the experts' opinions regarding whether Williams has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In applying the criteria for a diagnosis of personality disorder, Dr. Self gave heavier consideration to Williams's long history of criminality over his good prison disciplinary history, while Dr. Mauro attributed Williams's past criminal behavior exclusively to alcohol use disorder

and relied on his prison record to conclude that Williams can control his behavior. Additionally, Dr. Self explained why the presence or absence of secondary sex characteristics in child victims is not determinative of whether the perpetrator has a pedophilic disorder. The jury could accept Dr. Self's position that the diagnostic criteria for pedophilic disorder was not dependent upon the victims' physiologic staging because it is secondary to brain development, and reject Dr. Mauro's suggestion that it is appropriate to disregard the age of Williams's third victim when applying the diagnostic criteria for pedophilic disorder to Williams. The basis for each expert's application of the diagnostic criteria for the mental disorders was provided to the jury, and the jury could determine what weight to give each expert's testimony. *See id.*

The expert witnesses expressed conflicting opinions regarding the risk that Williams would reoffend by committing a sexually violent offense after his release from prison. Although they drew different conclusions from the same evidence, each expert explained why particular information in those records supported his or her reasoning. Dr. Mauro stated that actuarial instruments are considered but there are older individuals who commit sexually violent acts late in life. Dr. Self explained that Williams's age substantially affected his score on actuarial instruments; however, because Williams molested children well into his fifties, his

age did not significantly reduce his risk. Neither expert attached a statistical probability to whether a person is likely to reoffend. The basis for each expert's evaluation of the risk factors, the protective factors, and the scoring of the actuarial instrument was provided to the jury, and the jury could determine what weight to give each expert's testimony. *See id.*

"'Primary purpose of victimization' is not a specified element in section 841.003 [of the Texas Health and Safety Code]." *In re Commitment of Simmons*, 09-09-00478-CV, 2011 WL 2420832, at *1 n.1 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.). Nevertheless, Williams argues it is important for the State to show that he acted with predatory intent so as to identify him as being likely to engage in a predatory act of sexual violence. He argues such a showing requires some proof that his past offenses were committed for the primary purpose of victimization, and he suggests such a purpose was somehow disproved by evidence that he engaged in sexual contact with the intent to gratify himself sexually in the past. "The notion that an underage child cannot legally consent to sex is of longstanding origin and derives from the common law." *In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010). When Williams intentionally engaged in sexual contact with a child, he engaged in a sexually violent act and necessarily victimized the child. *See* Tex. Health & Safety Code Ann. § 841.002(5), (8)

(defining a predatory act as "an act directed toward individuals, including family members, for the primary purpose of victimization" and including an offense under section 21.11(a)(1) of the Texas Penal Code within the definition of a sexually violent offense).

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Williams is a sexually violent predator; thus, the evidence is legally sufficient. *See* Tex. Health & Safety Code Ann. § 841.062(a); *Mullens*, 92 S.W.3d at 885, 887. Weighing all of the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one through three. We affirm the trial court's judgment and order of commitment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 23, 2015
Opinion Delivered April 21, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.

14