In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00012-CV
_____

IN RE COMMITMENT OF STEVE HOOD JR.

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 15-05-05170-CV
_____

MEMORANDUM OPINION

The State of Texas filed a petition to commit Steve Hood Jr. (Hood) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2015) (SVP statute). A jury found that Hood is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Hood filed an appeal. In two issues, Hood challenges the sufficiency of the evidence to support the jury's verdict. We affirm the trial court's judgment and order of civil commitment.

1

## THE EVIDENCE AT TRIAL

### Admissions and Testimony of Hood

The State read Hood's responses to the State's request for admissions into the record before the jury. In Hood's responses and at trial, Hood admitted that he has five convictions for indecency with a child by contact and two convictions for aggravated sexual assault of a child. He testified that, at the time of trial, he was incarcerated for each of the seven convictions. Hood explained that one of his victims was his adopted sister, K.H. According to Hood, he fondled her in 1999 when he was approximately thirty-three years old and she was approximately fourteen years old, and he made a video recording of the act which he later watched. Hood testified that K.H. was asleep, and although he remembers sexually offending against her and videotaping the offense, he does not remember "any of the exact details[.]" He pleaded guilty to indecency with a child by contact, was convicted, and received a fifteen-year sentence for that conviction. He also admitted at trial that he sexually assaulted K.H. and that he pleaded guilty to aggravated sexual assault of a child, was convicted, and received a fifteen-year sentence for that offense.

Hood explained at trial that he also fondled A.B., his niece, in 1999 when she was approximately eleven years old, and he also made a video recording of that

2

offense. Hood testified that he recalled sexually offending against A.B. and recording the act but "couldn't recall hardly any details." As to A.B., Hood pleaded guilty to the charge of aggravated sexual assault of a child and to indecency with a child by sexual contact, was convicted and received a fifteen-year sentence for each offense.

Hood testified that he also pleaded guilty to three charges of indecency with a child by sexual contact in 2001 for offenses against three other girls younger than fourteen years old. Hood testified that two of the girls were his neighbors and one of the girls was a friend of the other two girls. Hood testified he took the three girls to the beach, and although he admitted at trial to sexually offending against the neighbors' children, he did not recall sexually offending against the other child. Hood admitted that he pleaded guilty to all three offenses, was convicted of the offenses, and received a fifteen-year sentence for each offense.

Hood testified that he graduated from high school, completed college courses, and was employed as a pipe fitter/welder prior to his incarceration. According to Hood, he had an injury at work in 1996 and he received a prescription for pain medicine. He testified that he began mixing the pain medication with alcohol and would sometimes drink a case of beer and take fifteen Vicodin in one day. Hood agreed that he has never participated in any sex offender

treatment and, although he indicated in his prior deposition that he did not believe he needed sex offender treatment, he testified at trial that he now believes he does need sex offender treatment.

Hood testified that he does not believe he is at any risk to reoffend sexually and he does not believe he has a problem when it comes to sexually offending. Hood explained that he will not reoffend when released from prison because he is "sober and clean now[]" and is "not the same person [he] was then." Hood testified that he does not have a sexual attraction to prepubescent girls and he does not believe that he had developed a sexual attraction to his victims prior to offending against them. According to Hood, he does not know why he sexually offended against his victims and he denied being sexually attracted to them. He testified that he "believe[s] the drugs and alcohol made [him] make stupid mistakes and make stupid decisions[,]" and he agreed that in his deposition he indicated that sexual issues with his wife led to his attraction to his victims. Hood admitted to being addicted to Vicodin and alcohol in the past but testified that he has not used drugs or alcohol in fifteen years, even though both have been available in prison.

Hood testified that he was diagnosed with leukemia in 2014 and has suffered with arthritis, high blood pressure, and hypothyroidism. Hood explained that the leukemia diagnosis has made him "rethink everything" and made him realize "how

4

much harder [he] need[s] to . . . work to make everything right in [his] life." According to Hood, he is now "a lot more mature, . . . more stable[,] . . . better educated[,]" and now attends church.

Testimony of Dr. Arambula

Dr. Michael Arambula, a medical doctor and licensed pharmacist who is board certified in general psychiatry and forensic psychiatry, testified for the State. Based on his education, training, and experience, and the methodology he used, Dr. Arambula believes Hood suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Arambula explained the methodology he used and records he reviewed for assessing a behavioral abnormality are consistent with the practice of other experts who do this type of evaluation. He stated that in reaching his opinion he interviewed Hood and reviewed Hood's records including a psychological evaluation of Hood, investigative records, medical records, administrative records, and a multidisciplinary team report, and actuarial tests pertaining to Hood, as well as Hood's deposition. According to Dr. Arambula, the facts of Hood's sexual offenses were important in helping Dr. Arambula determine whether Hood suffers from a behavioral abnormality. Dr. Arambula explained that he also relied on Hood's sexual convictions in forming his opinion and that the details of Hood's

5

convictions were significant in assisting Dr. Arambula in determining whether Hood has a behavioral abnormality because they "demonstrate the unique personal characteristics that an individual has when they have a sexually deviant condition."

Dr. Arambula testified that the records show that Hood's first sexual offenses were in 1999, when Hood was in his early thirties. Hood's wife discovered a videotape that led police to suspect that sexual assaults had occurred against Hood's adopted sister, K.H, and niece, A.B. The video depicted Hood performing various sexual acts on the children. Dr. Arambula explained that when he spoke with Hood about the offenses, Hood could not remember the details of the offenses and, as indicated in the records, Hood minimized and rationalized the offenses against K.H. and A.B. According to Dr. Arambula, K.H. and A.B. looked like they were asleep or intoxicated in the videos. Dr. Arambula explained that the records showed that although A.B. could not remember details from the videotaped sexual offense, she reported that other times Hood had crawled into her bed and fondled her. Dr. Arambula stated that Hood exhibited an attitude of demeaning his victims, minimizing them, and criticizing them because of past "misbehavior," as if what he did was "okay." Hood reported being intoxicated during the offenses and believed that is why he could not remember the details, but Arambula explained to the jury that, because "blackouts are associated with rising levels of

6

alcohol" and Hood was not drinking when he was videotaping and could operate the camera, it was Arambula's "clinical inference that [Hood] maybe was not as intoxicated as he said he had been."

Dr. Arambula testified that the records showed Hood's next sexual offenses were against three girls he took to the beach in 2001, and Hood was convicted of three charges of indecency with a child by contact. Each girl made an outcry and gave a forensic interview at a child advocacy center. Dr. Arambula explained that the records he reviewed showed that Hood had taken his victims to the beach in the past, that Hood had gained the trust of the victims' parents, and that he would tell the girls things like "I'm never going to hurt you[]" and "I love you[,]" which evidences that Hood was grooming his victims and their families.

Dr. Arambula testified he diagnosed Hood with "unspecified paraphilia with pedophilic features[]" and "personality disorder with some features of antisocial personality." Dr. Arambula explained that Hood's paraphilia is a chronic condition that persists over time. Dr. Arambula testified that the records he reviewed, Hood's trial testimony, and Arambula's interview of Hood supported Arambula's diagnosis of Hood's personality disorder because there are multiple offenses against victims which looked intoxicated or drugged, Hood repeated the offenses

7

over time, Hood was defensive at the time of his arrest and with Dr. Arambula, and Hood denied responsibility and sometimes rationalized his offenses.

Dr. Arambula identified the following factors as increasing Hood's risk of reoffending: Hood's sexual deviance and personality disorder with antisocial features; Hood's use of alcohol and opiates; the number of Hood's sexual victims; Hood's victims are girls and younger than teenagers; two of the victims appeared "out-of-it" when Hood sexually offended against them and did not have the ability to fight back or move away; the progression in the manner of Hood's sexual offenses; Hood's lack of treatment; and Hood's significant denial and minimization regarding his sexual offenses. Dr. Arambula identified the following positive or protective factors: Hood was a good worker in and out of prison; he has some work skills; he had a long-term relationship with his wife; and he is in remission with regard to alcohol and opiates.

Dr. Arambula acknowledged that on a Static-99R actuarial administered by another psychologist prior to Dr. Arambula's evaluation of Hood, Hood scored a "[z]ero[,]" which would indicate Hood has a low risk for reoffending. However, Dr. Arambula testified that he does not believe that the actuarial is an accurate indicator of Hood's risk of re-offense because it does not correctly account for Hood's offenses that occurred on different dates but surfaced at the same time, it

does not take into account some of the details of Hood's sexual offenses, and it does not measure dynamic risk factors such as minimization and denial. Dr. Arambula explained that there was nothing about Hood's trial testimony that changed Dr. Arambula's opinion concerning whether Hood has a behavioral abnormality.

On cross-examination, Dr. Arambula acknowledged that he did not conduct any type of independent verification of the information in the records he reviewed in the case and that all the information he received came from the Special Prosecution Unit. Dr. Arambula admitted he did not view the videotape of Hood's offenses, but instead relied upon an affidavit from a detective prepared about a month before trial regarding what was on the videotape.

SUFFICIENCY OF THE EVIDENCE

In two appellate issues, Hood challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. Specifically, Hood argues that Dr. Arambula's opinion that Hood suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence is speculative and conclusory because Dr. Arambula ignored his own stated methodology by relying on allegations in the detective's affidavit of September 19, 2015. Hood also asserts that Dr. Arambula's methodology is flawed, that he failed to apply his own

9

methodology, and instead "based his opinion almost entirely on his subjective feelings about Hood and Hood's past crimes." Hood complains that Dr. Arambula confused the jury and "even the prosecutor" with his testimony regarding Hood's risk and protective factors, that Arambula was confused "about the parameters of and uses of the [Static-99] actuarial test," and that "[h]is purported 'scientific' analysis added no insight[.]"

Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. §

10

841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2015). A "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2015). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

To the extent Hood argues on appeal that Dr. Arambula's methodology or underlying data on which he relied is unreliable, Hood failed to properly preserve these arguments. An objection to reliability must be timely made at trial. Tex. R. App. P. 33.1(a)(1) (providing that to preserve error, a defendant's challenge, whether by request, objection, or motion, must be timely); *In re Commitment of Grunsfeld*, No. 09-09-00279-CV, 2011 Tex. App. LEXIS 1337, at *16 (Tex. App.—Beaumont Feb. 24, 2011, pet. denied) (mem. op.). Hood did not challenge

the reliability of Dr. Arambula's methodology or the underlying data on which he relied at trial, and in his motion for new trial, he only alleged that "Petitioner did not proffer sufficient reliable evidence that Respondent had a behavioral abnormality and that such behavioral abnormality makes him likely to engage in a predatory act of sexual violence[.]" Hood has not shown that he challenged the reliability of Dr. Arambula's testimony at a time that would have allowed the trial court to conduct an analysis of the expert's underlying methodology. *See Grunsfeld*, 2011 Tex. App. LEXIS 1337, at \*16.

Under Texas law, wholly conclusory and speculative opinion testimony does not constitute legally sufficient evidence to support a verdict because such testimony "does not tend to make the existence of a material fact 'more probable or less probable.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (quoting *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)). Therefore, "[b]are, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *Id.* Hood argues that Dr. Arambula's opinions were baseless and that he ignored his own methodology. We disagree.

During the trial, the jury heard testimony about how Dr. Arambula reached his opinions. Dr. Arambula testified he is board certified in general psychiatry and

12

forensic psychiatry. In reaching his conclusions, Dr. Arambula testified that he applied training and experience related to evaluating whether a person has a behavioral abnormality, as well as the information he reviewed in Hood's case in forming his opinions. The testimony shows that Dr. Arambula interviewed Hood, reviewed records that are relevant to Hood's criminal history, and he reviewed the details of Hood's offenses involving sexually violent crimes. The records Dr. Arambula reviewed are the type of records that experts in Arambula's field rely on in forming opinions. Arambula also explained that he performed his assessment of Hood in a manner that is consistent with the accepted standards in the fields of general psychiatry and forensic psychiatry.

After Dr. Arambula explained his methodology and how he applied that methodology to Hood, Dr. Arambula testified that in his professional opinion Hood has a behavioral abnormality that makes Hood likely to engage in predatory acts of sexual violence. The jury heard evidence of Hood's risk factors, sexual offenses, and diagnoses. The jury heard Hood's testimony and admissions and Dr. Arambula's testimony that Hood's condition is chronic. We conclude that Dr. Arambula's testimony was not baseless nor was it too conclusory to support a finding that Hood suffers from a behavioral abnormality. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have

found, beyond a reasonable doubt, that Hood is a sexually violent predator, and the evidence is legally sufficient to support the jury's finding. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885.

As to Hood's arguments that portions of Dr. Arambula's testimony were vague and confusing, the jury is the sole judge of the weight and credibility of the evidence. *See Mullens*, 92, S.W.3d at 887. On this record, the evidence allowed the jury to draw reasonable inferences from basic facts to determine ultimate issues. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). And, the jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of the testimony. *In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *20 (Tex. App.—Beaumont Jan. 15, 2009, no pet.) (mem. op.).

We further conclude that, as sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Hood suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 Tex. App. LEXIS 4750, at *8 (Tex. App.—Beaumont May 1, 2014, pet. denied) (mem. op.); *see also*

14

*Mullens*, 92 S.W.3d at 887. Weighing all of the evidence, we also conclude the verdict does not reflect a risk of injustice that compels ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule both issues raised by Hood, and we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 31, 2016
Opinion Delivered August 11, 2016

Before McKeithen, C.J., Horton and Johnson, JJ.