In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00134-CV**
_____

**IN RE COMMITMENT OF SAMUEL SAN-MIGUEL**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-07-07301 CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Samuel San-Miguel as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2015). A jury found that San-Miguel is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. In two appellate issues, San-Miguel challenges the legal and factual sufficiency of the evidence. We affirm the trial court's judgment and order of civil commitment.

In issues one and two, San-Miguel contends the evidence is legally and factually insufficient to support the finding that he has a behavioral abnormality

1

that makes him likely to engage in a predatory act of sexual violence. We address San-Miguel's issues together. Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a) (West Supp. 2015). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the

2

person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2015). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

San-Miguel admitted that he was convicted of two cases of aggravated sexual assault of a child. San-Miguel also admitted that he received over fifty disciplinary cases while in prison, over thirty of which were classified as major. In addition, San-Miguel admitted that during his incarceration, he received multiple disciplinary cases for attempting to establish an inappropriate relationship with a staff member,[1] as well as multiple disciplinary cases for sexual misconduct.

Clinical psychologist Dr. Darrel Turner testified that after reviewing all of the records and interviewing San-Miguel, he determined that San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Turner testified that San-Miguel is sexually deviant, and he

---

[1]One of the prison staff members testified that she wrote between thirty-five and fifty disciplinary cases against San-Miguel for breaking the rules, including conduct he directed towards her, and she described him as a "[s]talker and psychotic."

explained that San-Miguel had raped a thirteen-year-old girl and orally raped a six-year-old girl and had been convicted of sexual offenses.

Turner testified that in forming his opinion that San-Miguel has a behavioral abnormality, he relied upon San-Miguel's convictions and admissions of other sexual offenses, as well as his own finding that San-Miguel is sexually deviant. Turner explained that he diagnosed San-Miguel as suffering from hebephilia (sexual attraction to children who have begun to develop secondary sexual characteristics), antisocial personality disorder, sexual abuse of a child, and polysubstance abuse in partial remission. Turner testified, "[i]t's clear that there is a sexual deviance. It's clear that there is some paraphilia which is . . . a term that means an attraction to something outside of the norm." Turner testified that San-Miguel laughed about the fact that the younger sister of his thirteen-year-old victim was also in the bed while he was sexually assaulting the victim. Turner explained that San-Miguel forced his sexual organ into that younger child's mouth. According to Turner, San-Miguel "is not remorseful[,]" "seems to still take pleasure in what happened[,]" and "almost seemed proud of it." Turner explained that San-Miguel's lack of remorse is "further evidence that he has a behavior abnormality today[.]" Turner testified, "I really got a glimpse of what this offender is really like, and it was scary."

4

Turner identified as risk factors the young age of San-Miguel's victims, use of force, San-Miguel's relatively young age, tendency to denigrate and blame his victims, polysubstance abuse in partial remission, and hebephilia. Turner also discussed San-Miguel's deviant sexual behavior in prison, such as exposing his sexual organ to female staff members, masturbating in front of female staff members, trying to establish inappropriate relationships with female staff members, and "noncontact homosexual behaviors[.]"

According to Turner, during his interview with San-Miguel, San-Miguel leered at a female correctional officer, which Turner testified evidences "a lack of impulse control and just this predatory nature." Turner described San-Miguel's staring at the officer as a "psychopathic reptilian predatory stare." Turner explained that a lack of impulse control indicates a behavioral abnormality that would make someone likely to engage in a predatory act of sexual violence, and he opined that San-Miguel's sexual offenses and current sexual deviancy constitute evidence that San-Miguel's emotional and volitional capacity has been affected. According to Turner, San-Miguel's sexually deviant behavior is evidence of antisocial personality disorder.

Turner also testified that San-Miguel's score on the Hare psychopathy checklist was "[e]xtremely high." Additionally, Turner testified that San-Miguel's

5

actuarial scores placed him in a "high to moderate range of risk for reoffending[,]" and San-Miguel has not had sex offender treatment. Turner also testified that San-Miguel's release plan did not address preventative measures to keep him from reoffending. Turner opined that San-Miguel has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Psychiatrist Dr. Sheri Gaines testified that she evaluated San-Miguel and relied upon principles of forensic psychiatry in doing so. Gaines explained that standard methodology involves a face-to-face interview, as well as reviewing police records, victim statements, depositions of other experts, and other ancillary information. Gaines testified that she interviewed San-Miguel for approximately two hours and reviewed the records from Turner, another expert, and San-Miguel's deposition. Gaines opined that, based upon her education, training, experience, and the methodology she used, San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

According to Gaines, the main reasons for her findings were San-Miguel's risk factors of sexual deviancy and unstable lifestyle. Gaines explained that the facts and data surrounding San-Miguel's sexual convictions also constituted risk factors and helped her to formulate her opinion about whether San-Miguel is likely to reoffend. Gaines testified that San-Miguel told her his thirteen-year-old victim

6

had made advances toward him. Gaines explained that the age of San-Miguel's victims, San-Miguel's substance abuse, his use of force, and his belief that he does not need sex offender treatment are risk factors. In addition, Gaines testified that San-Miguel's "stoic description of these horrific events indicated his lack of remorse." Gaines testified that San-Miguel had received disciplinary cases in prison for refusing to work, not obeying orders, assault, contraband, "dirty urinalysis," use of drugs and alcohol, masturbation, and attempting to establish an inappropriate relationship with a staff member.

Gaines explained that she diagnosed San-Miguel with paraphilic disorder, antisocial personality disorder, and "substance use disorder with many different substances." According to Gaines, Turner's diagnosis of hebephilia and her diagnosis of paraphilic disorder are "not really differences. They're complementary[;] they have a lot of the same characteristics. Just a different approach to the terminology." Gaines identified San-Miguel's support system with his family and his high school diploma as positive factors. Gaines testified that, in her expert opinion, San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

San-Miguel testified that he is currently incarcerated for two convictions of aggravated sexual assault of a child. San-Miguel testified that when the offenses

7

occurred, he was using drugs and alcohol with the father of the victims. San-Miguel denied raping the thirteen-year-old victim or using force against her, and he denied forcing the six-year-old victim to perform oral sex. San-Miguel testified that many of his disciplinary cases involved sexual misconduct.

Psychologist Roger Saunders testified that he met with San-Miguel for approximately two hours at the prison, and he did not see San-Miguel leer or stare at the female prison staff. According to Saunders, although the public believes a high percentage of sex offenders will reoffend, "[t]he known re[-]offense rates are actually pretty low." Saunders testified that denial and minimization do not predict an offender's likelihood of reoffending. Saunders explained that he saw no evidence that San-Miguel groomed his victims. Saunders opined that San-Miguel does not have a behavioral abnormality. In addition, Saunders testified that he does not consider San-Miguel a repeat sex offender "[b]ecause in the treatment community we understand this is a single event. Even though there was more than one victim, we understand it as a single sexual event." Saunders opined that San-Miguel's substance abuse history is "the prevailing factor in most of his criminal offenses." Saunders testified that "it's not a likelihood" that a person will repeat a crime he committed in an alcohol and drug-induced state. In addition, Saunders testified that because San-Miguel has had the opportunity to sexually assault but

8

did not act on it, San-Miguel does not have a serious difficulty with impulse control. According to Saunders, San-Miguel has "many antisocial personality characteristics based on his history[.]" Saunders also opined that based upon San-Miguel's age, he is no longer in the highest risk category for re-offense. During cross-examination, Saunders testified that a reasonable psychologist or psychiatrist could conclude that San-Miguel has antisocial personality disorder and is a psychopath.

As discussed above, San-Miguel admitted that he was convicted of two cases of aggravated sexual assault of a child, and that he had received multiple disciplinary cases during his incarceration. Turner opined that San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, San-Miguel is sexually deviant, and San-Miguel suffers from hebephilia, antisocial personality disorder, abuse of a child, and polysubstance abuse in partial remission. Turner also noted that San-Miguel lacked remorse, and he identified as risk factors the young age of San-Miguel's victims, San-Miguel's use of force, San-Miguel's relatively young age, tendency to denigrate and blame his victims, polysubstance abuse in partial remission, and hebephilia. Turner also testified that San-Miguel's scores on actuarial instruments place him in the high to moderate range of risk for reoffending.

9

Gaines also testified that San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and she explained that the age of San-Miguel's victims, San-Miguel's substance abuse, use of force, and his belief that he does not need sex offender treatment are risk factors. Gaines diagnosed San-Miguel with paraphilic disorder, and "substance use disorder with many different substances."

As sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that San-Miguel suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Richard*, No. 09-13-00539-CV, 2014 Tex. App. LEXIS 6974, at *7 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.). Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that San-Miguel is a sexually violent predator; therefore, the evidence is legally sufficient. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885. In addition, weighing all of the evidence, including the testimony of San-Miguel and Saunders, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule

10

issues one and two and affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 10, 2015
Opinion Delivered December 10, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

11