In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00232-CV
_____

IN RE COMMITMENT OF FLOYD WESLEY GIBBS

_____

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CV2016553

_____

**MEMORANDUM OPINION**

A jury unanimously determined beyond a reasonable doubt that Floyd Wesley Gibbs is a sexually violent predator pursuant to the Sexually Violent Predators Act ("SVP Act"). *See* Tex. Health & Safety Code Ann. §§ 841.001-.153. As a result, the trial court civilly committed him for sex-offender treatment and supervision. Gibbs challenges the sufficiency of the evidence to support a finding beyond a reasonable doubt that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Having reviewed the record and the arguments asserted, we affirm the trial court's judgment and order of commitment.

1

BACKGROUND

In 2020, the State petitioned to civilly commit Gibbs under the SVP Act, which permits commitment of individuals upon a finding that (1) they are a "repeat sexually violent offender" and (2) suffer "from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). Gibbs filed an answer denying the State's allegations.

At trial, the State presented testimony from Dr. Christine Reed, a clinical and forensic psychologist. After detailing her training and experience in sex-offender risk assessment, Reed described how she met with and evaluated Gibbs for the purpose of determining whether he suffers from a behavioral abnormality that would subject him to civil commitment under the SVP Act. Reed testified that a "behavioral abnormality" is a congenital or acquired condition (i.e., a condition one is born with or picks up over the course of one's life) that, by affecting someone's emotional or volitional capacity, predisposes them to commit sexually violent offenses. Since the word "likely" is not defined by the SVP Act, Reed opined that the word "likely" means "probable." Predatory act, which is defined in the statute, is "an act directed toward individuals, for the primary purpose of victimization."

Reed explained that when conducting a behavioral abnormality evaluation, she reviews volumes of records, which can include a referral file, court records, police reports, jail and prison records, medical records, and evaluations performed

2

by other psychologists. After reviewing the records, Reed meets the individual face to face. However, due to the COVID-19 pandemic, Reed met with Gibbs using a video conference. Reed explained that she typically interviews an individual for two to three hours and obtains information regarding the person's background and history. During the interview, Reed gathers information to assist her in completing questionnaires and psychological assessments, which gives her information about that individual's risk of reoffending. After gathering all relevant information, she forms an opinion as to whether the individual has a behavioral abnormality. Reed confirmed she followed that methodology in evaluating Gibbs and arriving at her opinion that he suffers from a behavioral abnormality.

Reed also employed three testing instruments commonly used by experts in evaluating sex offenders for potential behavioral abnormalities under the SVP Act: (1) the Static-99R, which contains a list of ten risk factors that have been studied in sex offenders and assesses the likelihood of a sex offender to reoffend; (2) the Hare Psychopathy Checklist ("PCL-R"), which is a measure of psychopathy; and (3) the Risk of Sexual Violence Protocol, which is a research-based checklist of other general risk factors known to increase the risk for reoffending. Reed explained that risk factors are qualities that have been studied and found to correlate to a higher risk of sexually reoffending.

Regarding Gibbs's sexual criminal history, Reed testified that in 1978, when Gibbs was in his twenties, he sexually assaulted a six-year-old girl named Becky.[1] Reed explained that Gibbs was dating and living with Becky's mother when the incident occurred. Concerning Becky, Gibbs told Reed that he went to the restroom and that when he came out,, Becky was "buck naked." According to Gibbs, Becky asked Gibbs to touch her genitalia. Gibbs also told Reed that he kissed Becky on the mouth because she wanted him to. Reed testified that police records and victim statements show that when Becky was left in Gibbs's care, he told Becky he wanted her to take off her clothes to play doctor, and after Becky complied, Gibbs took off his clothes, fondled her genitalia, kissed her on the mouth, and sucked on her breast. As related to this incident, Gibbs was convicted of indecency with a child and received a ten-year deferred probation.

Reed testified that in 1983, Gibbs was in his mid-thirties when he sexually assaulted his twelve-year-old cousin, Mark.[2] When the second offense occurred, Gibbs was on probation for the offense against Becky. Reed explained that Gibbs took Mark and Mark's friend, Hal, to a family party, and that night all three of them slept in the living room. Reed testified that during the night, Gibbs took off Mark's

---

[1]We refer to the victims referred to in the opinion using pseudonyms to protect their identities. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2]A pseudonym.

pants and performed oral sex on Mark, and after Mark awoke and asked Gibbs to stop, Gibbs kissed and blew on Mark's stomach. At some point, Mark's mother walked into the room, confronted Gibbs, and told him to leave, and Hal told the police that he witnessed the incident. Mark was examined by a doctor and that examination showed that Mark contracted herpes. Gibbs was convicted of aggravated sexual abuse of a child, was sentenced to ten years in prison, but he was later released on parole.

Reed testified that Gibbs recounted a different version of events and reported that he attended the family party with the boys and slept in the living room, and that he woke up in the middle of the night to use the restroom, and upon his return, he found Mark "buck naked" on the floor. Gibbs claimed that Mark asked him to engage in sexual activity, so he did. Gibbs told Reed that he did not know how Mark contracted herpes. But Reed testified that when she subsequently asked Gibbs whether "he ever had a sexually transmitted disease, he acknowledged that he had herpes."

Reed explained that in 1988, Gibbs was on parole for sexually assaulting Mark when he sexually assaulted another twelve-year-old boy named Daniel, an acquaintance of Gibbs.[3] Reed explained that after Gibbs took Daniel and his young brother swimming, Gibbs told Daniel he "wanted to see how big he was, meaning

---

[3]Daniel is also pseudonym.

his penis" and reached over and touched Daniel's penis over his clothing. As a result of this incident, Gibbs was convicted of indecency with a child, and he received a life sentence. Gibbs told Reed that Daniel and his father lied about the incident, and Gibbs claimed that Daniel's father fabricated the offense to punish Gibbs because he was upset due to a dispute over money.

Reed testified that there were several sexual allegations made against Gibbs that did not result in criminal convictions. There were allegations that Gibbs sexually assaulted Mark and Daniel on more than one occasion. Reed explained that a month prior to the incident with Mark, which resulted in Gibb's conviction, Gibbs performed oral sex on Mark in Mark's living room, Hal witnessed the incident, and both boys reported the incident to the police. Reed told the jury that Gibbs sexually assaulted Daniel under similar circumstances, explaining that when Gibbs was in the car with Daniel, he pulled over and touched Daniel's penis over his pants. Gibbs told Reed that allegation was a lie.

Reed also testified that in 1982, allegations were made against Gibbs that he had sexually assaulted a thirteen-year-old boy named Errol, a family friend.[4] Reed explained that the allegations were that Gibbs spent a night in Errol's bed, rubbed on Errol's stomach, and touched his penis. On a second occasion when Gibbs spent the night at Errol's home, Errol was allegedly sleeping on the couch when Gibbs

[4]A pseudonym.

told him "you better not mess with me." When Errol woke up, Gibbs was performing oral sex on him. Reed testified that Gibbs allegedly sexually assaulted Errol a third time when Gibbs touched Errol's penis when Errol was driving Gibbs's car. Gibbs denied these allegations during his discussions with Reed.

In another incident around 1983, Gibbs was reportedly driving with a twelve- or thirteen-year-old boy named Monty.[5] Reed explained that Monty was allegedly sitting in Gibbs's lap as he was driving the car when Gibbs put his hand down Monty's pants, touched his penis, and told him not to tell anyone. In the 1980's, yet another individual, according to Reed, had alleged that Gibbs had sexually assaulted him, an inmate at the same prison as Gibbs. That inmate reportedly told staff that he did not want to be in the same facility as Gibbs. The inmate declared that if housed in the same facility as Gibbs, he might kill him because Gibbs had sexually abused him when he (the inmate who made the complaint) was a child.

Reed also testified about Gibbs's nonsexual criminal history. Reed testified that at seventeen, Gibbs was arrested for burglary and spent one month in jail before the case was dismissed. Reed also testified that Gibbs was arrested for simple assault and paid an $18 fine. Additionally, Gibbs was convicted of driving while intoxicated ("DWI") and placed on probation, which was revoked because Gibbs failed to report to his probation officer and pay the required fees. Reed testified that one of the court

_____

[5]A pseudonym.

7

documents she reviewed indicated Gibbs was arrested for DWI more than once, but she could not determine if he was convicted or charged with those DWIs. Reed opined that if someone has one DWI, they may have substance abuse issues, but she did not have enough information to determine if Gibbs had a problem with alcohol.

Reed diagnosed Gibbs with pedophilic disorder and unspecified personality disorder with anti-social traits. Reed characterized persons with anti-social personality disorder as aggressive and deceitful people who get into fights and legal trouble. Reed did not diagnose Gibbs with antisocial personality disorder because that diagnosis requires evidence of a conduct disorder prior to age fifteen, and she did not have any evidence that Gibbs had started acting out prior to that age. She determined Gibbs exhibited enough traits of an anti-social personality to diagnose him with an unspecified personality disorder with anti-social features. Reed explained that pedophilic disorder is a sexual attraction to prepubescent children who are not fully developed. Reed testified that both the pedophilic disorder and anti-social features are congenital or acquired conditions that affect Gibbs's emotional or volitional capacity. Gibbs's pedophilic disorder is chronic, meaning he cannot be cured from having those types of sexual urges.

As part of her evaluation, Reed completed several psychological assessment tools. Reed completed the Static-99R, which is a test that measures a person's risk of reoffending based on certain risk factors as compared to other sex offenders. Reed

explained that it is impossible to predict whether an individual will sexually reoffend in the future, but tests like the Static-99R are useful in determining an individual's risk of doing so. Reed testified that Gibbs scored a two on the Static-99R, which placed Gibbs at an average risk of reoffending, but Reed explained that Gibbs's score did not fully capture Gibbs's risk level because there are other factors that determine his risk. One tool that assisted Reed in determining Gibbs's other factors for reoffending is the Risk for Sexual Violence Protocol, which is a list of general risk factors for sexual reoffending. This measure includes dynamic factors, which means it accounts for factors that an individual can change to reduce the risk of reoffending.

Reed also completed the PCL-R, which is a test that determines if an individual is a psychopath, and she testified that characteristics of psychopaths include lack of conscience, problems with empathy, lack of remorse, narcissism, grandiosity, and violating the rights of others. Reed explained that a person's degree of psychopathy is relevant in evaluating a person's behavioral abnormality because there is a link between sex offending and being high in psychopathic traits. Reed further testified that Gibbs scored a twenty-eight on the PCL-R, which was two points below the generally accepted cutoff of thirty to diagnose someone as a psychopath. Reed noted that Gibbs was "pretty high" in psychopathic traits, as indicated by his anti-social orientation and lifestyle. Reed also noted that most pedophiles are not actually psychopaths, so it was unusual that Gibbs scored so high.

9

Reed testified that a risk factor is anything through research found to be associated with reoffending. Reed explained that sexual deviance and anti-social orientation are two of the biggest risk factors for reoffending. Reed defined "sexual deviance" as "sexual behavior that significantly deviates from the norm" and stated that Gibbs is sexually deviant because he engaged in sexual behaviors with underage individuals which suggests an attraction to underage children. Reed also explained that in addition to Gibbs's sexual convictions, Gibbs's convictions for nonsexual offenses and his sexual offenses for which there were no convictions were important to Reed's opinion that Gibbs suffers from a behavior abnormality because those acts show a pattern of behavior of an anti-social lifestyle. Reed identified several risk factors for Gibbs using the psychological assessment tools, which included a history of:

- Multiple convictions for sex offenses;

- Recurring incidents of sexual violence over a long period despite being sanctioned;

- Acceptance and approval of sexual behavior with young children;

- Male victims and non-familial victims, a victim profile associated with defendants who carry a higher risk of reoffending;

- Non-sexual criminal offenses;

- Violations of the terms of past conditional releases;

10

- Incident of prison misconduct (threatening inmates, threatening officers, some fights, and using indecent or vulgar language);

- Psychopathic traits;

- Minimization and denial of sexual violence; and

- Significant problems in sex offender treatment.

Reed also considered Gibbs's positive considerations and protective factors, which she balanced against his risk factors, and which are used to reduce an individual's risk to reoffend. Reed identified two general positive considerations that applied to Gibbs. The first factor is Gibbs's age. Reed testified the risk for re-offense "drops off pretty dramatically" after the age of sixty. However, Reed told the jury that the fact that Gibbs was seventy-two does not necessarily decrease his individual risk, because in the weeks and months prior to her evaluation, Gibbs told Reed he continues to have a sexual attraction to children.

The second factor Reed identified is participation in sex offender treatment. However, Reed testified that sex offender treatment was not a protective factor for Gibbs for the following reasons: he is not participating in treatment in a meaningful way; believes that being in treatment is harmful because reading the treatment manuals and materials may somehow make him worse; does not believe that he needs treatment; and has no insight into why he sexually offends. Reed could not confirm that sex offender treatment was a protective factor for Gibbs. Reed opined

11

that Gibbs suffers from a behavioral abnormality comprised of pedophilia and an anti-social lifestyle which are chronic conditions that Gibbs minimizes.

When Gibbs testified in his trial and addressed his criminal history, he acknowledged that at seventeen, he was arrested for breaking and entering, but he denied participating in the crime. He also admitted to being arrested for simple assault and DWI but denied having multiple DWI arrests. He also denied being arrested for having a bayonet in his car when he was twenty-four and for fighting and trespassing. In conclusion, Gibbs said he did not think he hurt his victims, believed it was safe for him to be around children, and planned to stay out of prison by "staying honest" and "staying away from anything wrong and doing everything the right way."

When Gibbs turned to his conviction of sexually assaulting Becky, he testified the offense occurred when he was twenty-nine and Becky was six. Gibbs disagreed with Reed's version of events and claimed that he was watching Becky play in the recreation yard at the apartment complex. Gibbs testified that they both went inside the apartment and when he came out of the restroom, Becky was standing in the living room without her clothes on when she asked Gibbs to touch her vagina. Gibbs testified he touched Becky's vagina, told her that it was wrong, and then told her to put on her clothes. Gibbs also told the jury that when he touched Becky, he knew it

was wrong to have sexual contact with a child, but believed Satan entered his mind and made him do it.

Gibbs related that he did not complete his probation for the sexual offense against Becky because he was convicted for another sexual offense against Mark. Gibbs testified that he was thirty-four and Mark was twelve when the offense occurred. Gibbs denied most of the details Reed told the jury but admitted performing oral sex on Mark. Gibbs told the jury that Mark's parents asked Gibbs to take Mark to a party, and he spent the night at Mark's house and slept in the living room with Mark and Hal. Gibbs testified that when he returned from the restroom, Mark was lying naked on the floor with an erection. Gibbs claimed that Mark asked Gibbs to put his penis in his mouth, and Gibbs told the jury that Satan entered his mind and he put Mark's penis in his mouth for a few seconds.

Gibbs denied giving a statement to police that he performed oral sex on Mark. However, when confronted with his signed confession, Gibbs agreed that he tickled and blew on Mark's belly and gave Mark oral sex to show Mark that someone cared for him and to make him feel better. Gibbs also denied exposing his penis to Mark and asking him to play with it and performing oral sex on another occasion. Gibbs testified that he was released on mandatory supervision in 1987, and in 1988, he was accused of fondling Daniel, which Gibbs characterized as a "bald-face lie." Gibbs confirmed that he drove Daniel and his younger brother to go swimming but denied

13

doing anything sexual to Daniel. Gibbs recounted that after the boys finished swimming, Daniel made a sexual remark in the car, and Gibbs responded, "shut up or I'll pinch [your] penis off." Gibbs explained that he reached over and put a "stomach claw" on Daniel and that if he did touch Daniel's penis, it was by accident. Gibbs believed Daniel's father coached Daniel because Gibbs and Daniel's father were involved in a dispute over money.

Gibbs admitted to fondling Errol's penis once but denied offending against Errol on three separate occasions. He also told the jury that he did not molest Monty. Gibbs admitted that he was confronted by Errol and Monty's parents, who agreed not to press charges because Gibbs told them he was seeing a psychiatrist to get help to stop his behavior. Gibbs also denied molesting a fellow inmate when that inmate was a child.

Gibbs testified that he had almost completed a nine-month sex offender treatment program, which helped him some, but he found the program's material to be very offensive because it could cause a person "to keep those filthy thoughts in his mind." Gibbs claimed he had improper thoughts every time he went to sex offender treatment, and he believed that the best help was God.

The jury found that Gibbs is a sexually violent predator beyond a reasonable doubt, and the trial court entered a judgment and order civilly committing Gibbs pursuant to the SVP Act. This appeal followed.

14

ANALYSIS

In a single issue, Gibbs argues that given his advanced age and the disputed evidence that a reasonable jury could not have credited in favor of the SVP finding, the evidence is factually insufficient to support the jury's finding that he is a sexually violent predator. The State argues that Gibbs failed to cite any authority to support his argument that his advanced age makes it impossible for him to be a sexually violent predator.

In examining the factual sufficiency standard of review in SVP case, the Texas Supreme Court held that:

> a properly conducted factual-sufficiency review in an SVP case requires the court of appeals to determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is an SVP. In doing so, the appellate court may not usurp the jury's role of determining the credibility of witnesses and the weight to be given their testimony, and the court must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient to support the verdict.

*In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020). In other words,

> in an SVP case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in the light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met.

15

*Id.* at 675.

> In enacting the SVP Act, the Legislature found that:

> a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. . . . Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

Tex. Health & Safety Code Ann. § 841.001; *see also In re Commitment of Fisher*, 164 S.W.3d 637, 639–40 (Tex. 2005).

To establish that an individual is an SVP, the State must prove that the individual: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003(a). Under the first element of the SVP statute, a person is a "repeat sexually violent offender" if "the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses[.]" *Id.* § 841.003(b). Indecency with a child and aggravated sexual assault are sexually violent offenses, and Gibbs does not challenge the first element on appeal. *Id.* § 841.002(8)(A); *see* Tex. Penal Code Ann. §§ 21.11 (indecency with a child), 22.021 (aggravated sexual assault).

Under the second element under the SVP statute, a "[b]ehavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or

16

volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code Ann. § 841.002(2).

Gibbs relies primarily on two facts for his argument that the evidence was factually insufficient to show he had a behavioral abnormality: (1) his advanced age; and (2) the disputed testimony from Gibbs regarding the underlying facts of his offenses. In our opinion, the evidence admitted in Gibbs's trial provides sufficient evidence to support Reed's conclusion that Gibbs suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Although Reed's age may weigh against the risk that he might reoffend, no expert witnesses testified on Gibbs's behalf, and so there's no opinion testimony in the record from an expert that contradicting Reeds' testimony that Gibbs has a behavioral abnormality and is likely to reoffend. Reed also considered but ultimately rejected Gibbs's age as a protective factor in his case, and she explained why she did so. The jury was entitled to accept her explanation as reasonable, and to credit her testimony that Gibbs has a behavioral abnormality that makes him likely to reoffend. On this record the jury could have reasonably concluded beyond a reasonable doubt that Gibbs has a behavioral abnormality that makes him likely to reoffend. *See Stoddard*, 619 S.W.3d at 678.

17

Additionally, even though Gibbs contradicted some of Reed's testimony, the jury was free to disregard his testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 695, 697 (Tex. 1986) (stating the trier of fact "may believe one witness and disbelieve others"); *see also In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). Faced with two competing narratives, the jury chose to believe the State's evidence and disbelieve Gibbs. Because the jury had the right in its discretion to credit Reed's testimony and to find it reasonable, we may not substitute our judgment for that of the jury, as it is the sole judge of the credibility and the weight to be given to the witnesses' testimony. *See Stoddard*, 619 S.W.3d at 678. Based on this record, we cannot conclude that the remaining evidence contrary to the behavioral-abnormality finding is so significant in light of the entire record that the jury could not have found beyond a reasonable doubt that the statutory elements were met. *See id.* We conclude that legally and factually sufficient evidence supports the jury's finding that Gibbs is a sexually violent predator. We overrule Gibbs's sole issue and affirm the trial court's judgment and order of commitment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 4, 2022
Opinion Delivered August 24, 2023

Before Golemon, C.J., Horton and Wright, JJ.

18